OPINION
{¶ 1} Appellant Jason Barron appeals his conviction, in the Perry County Court of Common Pleas, for two counts of aggravated vehicular homicide. The following facts give rise to this appeal.
 {¶ 2} The accident resulting in the charges against appellant occurred on February 28, 2004, at approximately 4:25 p.m., at the intersection of State Route 13 and Township Road 312, in Perry County. Prior to the accident, appellant played golf with Larry Wilson, II and Travis Post, at Crystal Springs Golf Course. Appellant drove a black Monte Carlo to the golf course and Travis Post drove a green Cavalier. On the return trip home from the course, appellant drove the Monte Carlo and Wilson drove the Cavalier, with Post as a front seat passenger.
 {¶ 3} The vehicles parted ways as they left the golf course. However, just north of six-mile turn, the vehicles met again. As they left six-mile turn and headed south on State Route 13, the Cavalier, driven by Wilson, was the lead vehicle with appellant following behind in the Monte Carlo. The accident occurred when a Dodge Neon traveling on Township Road 312 attempted to cross State Route 13. Jena Snider was the driver of the Neon and Jenna Mumford was a passenger. The Cavalier driven by Wilson struck the Neon first and a second later, the Monte Carlo, driven by appellant, also struck the Neon. The Perry County Coroner pronounced both victims dead at the scene of the accident.
 {¶ 4} On June 23, 2004, the Perry County Grand Jury indicted appellant on two counts of aggravated vehicular homicide. Appellant entered a plea of not guilty and this matter proceeded to a jury trial in November 2004. At trial, several witnesses testified about the manner in which both appellant and Wilson were driving their vehicles. These witnesses estimated that the vehicles were traveling between 80 and 90 miles per hour. At times, the witnesses also observed the vehicles side by side as if they were racing. Following deliberations, the jury found appellant guilty as charged. The trial court ordered appellant to serve two consecutive three-year terms of imprisonment.
 {¶ 5} Appellant timely filed a notice of appeal and sets forth the following assignments of error for our consideration:
 {¶ 6} "I. THE EVIDENCE THAT THE APPELLANT, JASON MICHAEL BARRON, PROXIMATELY CAUSED THE DEATH OF JENA SNIDER AND JENNA MUMFORD WAS INSUFFICIENT AS A MATTER OF LAW.
 {¶ 7} "II. THE TRIAL COURT ERRED AS A MATTER OF LAW BY OVERRULING APPELLANT, JASON MICHAEL BARRON'S, MOTION FOR JUDGMENT OF ACQUITTAL WHERE THE APPELLANT WAS ENTITLED TO SUCH JUDGMENT AS A MATTER OF LAW.
 {¶ 8} "III. THE JURY VERDICTS CONVICTING THE APPELLANT, JASON MICHAEL BARRON, WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 9} "IV. THE TRIAL COURT COMMITTED PLAIN ERROR BY FAILING TO PROVIDE THE JURY WITH SEPARATE INSTRUCTIONS REGARDING CAUSATION AS TO EACH VICTIM AND EACH DEFENDANT."
 I {¶ 10} In his First Assignment of Error, appellant maintains the evidence that he proximately caused the deaths of the two victims was insufficient as a matter of law. We disagree.
 {¶ 11} R.C. 2903.06(A)(2) sets forth the elements of aggravated vehicular homicide as follows:
 {¶ 12} "(A) No person, while operating or participating in the operation of a motor vehicle, * * * shall cause the death of another or the unlawful termination of another's pregnancy in any of the following ways:
 "* * * {¶ 13} "(2) Recklessly;"
 " * * *" {¶ 14} Appellant essentially challenges the element of proximate cause. For criminal conduct to constitute "proximate cause" of a result, the conduct must have (1) caused the result, in that but for the conduct the result would not have occurred, and (2) the result must have been foreseeable. State v. Muntaser, Cuyahoga App. No. 81915, 2003-Ohio-5809, at ¶ 38, citing State v. Lovelace (1999), 137 Ohio App.3d 206, 216.
 {¶ 15} Foreseeability is determined from the perspective of what the defendant knew or should have known, when viewed in light of ordinary experience. Id., citing Lovelace at 219. It is not necessary that the defendant be able to foresee the precise consequences of his conduct; only that the consequences be foreseeable in the sense that what actually transpired was natural and logical in that it was within the scope of the risk created by the defendant. Muntaser at ¶ 38, State v. Losey (1985),23 Ohio App.3d 93, 96.
 {¶ 16} On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. Appellant sets forth three arguments in support of his claim that the jury's finding of proximate cause is against the sufficiency of the evidence. First, appellant contends he did not cause the initial collision, that Wilson first struck the Dodge Neon. Thus, appellant concludes the state, judge and jury lost its way by shifting the burden of proof to him and requiring him to prove that he did not proximately cause the death of either or both of the victims.
 {¶ 17} In response, the state maintains it is not required to establish, by direct evidence, that it was the impact of appellant's vehicle that proximately caused the deaths of the two victims. Instead, the state argues that proximate cause is established and a person is criminally liable for the direct, proximate and reasonably inevitable consequence of death resulting from his original act. This occurs when the person, acting individually or in concert with another, sets in motion a sequence of events, the foreseeable consequence of which were known or should have been known to him at the time.
 {¶ 18} The state contends that the following evidence, presented at trial, established that appellant proximately caused the death of the two victims. Appellant and Wilson were seen coming out of a corner into a straight stretch of the road, by Paul Penrod's residence, at speeds in excess of 80 miles per hour. Tr. Vol. II at 504. The two vehicles came out of the corner, north of Penrod's house, somewhat side by side. Id. at 493. As they traveled down the stretch of road, a vehicle crested the hill and almost collided with the vehicle being driven by appellant. Id. at 547, 554.
 {¶ 19} Thereafter, appellant again attempted to pass Wilson, at an extremely high rate of speed, and almost caused a collision with a second northbound vehicle driven by Greg Allen. Id. at 518, 531. However, despite these two near misses, appellant continued to operate the vehicle at speeds in excess of 100 miles per hour, while riding the bumper of Wilson's vehicle, over a hilly stretch of road. Id. at 509, Vol. I at 281. Although appellant was familiar with the terrain of the road and knew the intersection was ahead, he continued to operate his vehicle at a high rate of speed.
 {¶ 20} Further, the witnesses realized the hazard of appellant and Wilson's conduct. Rex Allen stated, to his son, that "something bad was going to happen." Id. at 476. Paul Penrod thought to himself, "here's a wreck." Id. at 492. Greg Allen stated to his wife, "he hoped they slowed down before they killed themselves or someone else." Id. at 522.
 {¶ 21} The state concludes and we agree, that based upon this testimony, a reasonable juror could conclude that appellant's conduct created a high likelihood of an accident. Further, the fact that the accident occurred was foreseeable in the sense that what actually happened was natural and logical because it was within the scope of the risk created by appellant's conduct.
 {¶ 22} We find no evidence, in the record, that the state, judge or jury shifted the burden to appellant thereby requiring him to prove that he did not proximately cause the deaths of either victim. The state properly relied upon the fact that appellant set in motion a sequence of events, by chasing Wilson's vehicle and attempting to pass him, the foreseeable consequence of which should have been known to appellant. As such, the argument presented by the state, concerning proximate cause, and the presentation of evidence in support of this argument did not improperly shift the burden to appellant.
 {¶ 23} Appellant next argues the jury's finding of proximate cause is against the sufficiency of the evidence because there was no evidence of drag racing. R.C. 4511.251(A) defines "street racing" as follows:
 {¶ 24} "(A) As used in this section and section 4510.036 of the Revised Code, `street racing' means the operation of two or more vehicles from a point side by side at accelerating speeds in a competitive attempt to out-distance each other or the operation of one or more vehicles over a common selected course, from the same point to the same point, wherein timing is made of the participating vehicles involving competitive accelerations or speeds. Persons rendering assistance in any manner to such competitive use of vehicles shall be equally charged as the participants. The operation of two or more vehicles side by side either at speeds in excess of prima-facie lawful speeds established by division (B)(1)(a) to (B)(7) of section 4511.21 of the Revised Code or rapidly accelerating from a common starting point to a speed in excess of such prima-facie lawful speeds shall be prima-facie evidence of street racing."
 {¶ 25} Appellant argues that without evidence of drag racing, the state was required to prove, beyond a reasonable doubt, that he and Wilson, severally, proximately caused the death of each victim by the reckless operation of their respective vehicles. Appellant cites the testimony of the coroner, Dr. Jeffrey Haggenjos, who testified about the cause of death as to each victim. Dr. Haggenjos stated, on cross-examination, that he could not determine which impact resulted in the deaths of the victims. Tr. Vol. I at 185-186.
 {¶ 26} We reject appellant's argument on the basis that the record contains sufficient evidence to support the conclusion that appellant and Wilson were street racing. The state presented testimony that appellant and Wilson were, at times, operating their vehicles side by side. Specifically, Paul Penrod testified that as he stood in his front yard, he observed the two vehicles coming out of a curve somewhat side by side and continue south past his residence, side by side, at speeds he estimated to be in excess of 80 miles per hour. Tr. Vol. II at 492-493. Roger Boyer and Vera Boyer topped a knoll and observed the two vehicles, side by side, coming toward them at a high rate of speed. Id. at 547, 554. The vehicle in the northbound lane slowed down and pulled in behind the other vehicle to avoid a collision as they passed the Boyers' vehicle. Id. at 548. Mr. Boyer went to the side of the road in order to avoid a collision. Id. at 554.
 {¶ 27} Greg and Sheila Allen observed the two vehicles coming out of the curve, by the junk yard, side by side, headed toward them. Id. at 518, 532. Both testified that one vehicle slowed and pulled in behind the other vehicle in order to pass. Id. at 518, 531-532. Finally, Trooper George King, of the Ohio State Highway Patrol, testified that he estimated the speed of the Cavalier and Monte Carlo, at point of impact, to be between 68 and 76 miles per hour. Id. at 425.
 {¶ 28} The above testimony establishes the vehicles were traveling side by side at speeds excess of the posted speed limits. Therefore, this testimony establishes prima-facie evidence of street racing. Recklessness may be imputed to appellant even though he was the second vehicle to strike the Dodge Neon. Accordingly, the state was not required to prove, beyond a reasonable doubt, that each defendant, severally, proximately caused the death of each victim.
 {¶ 29} Finally, appellant maintains that although there is no question that he and Wilson were speeding at the time of the accident, the fact that he was speeding, in and of itself, does not constitute reckless operation of a motor vehicle. In support of this argument, appellant cites the case of State v. Luttrell (July 31, 1985), Clinton App. No. CA85-02-002, wherein the Twelfth District Court of Appeals stated that "* * * mere speeding in and of itself does not constitute reckless operation." Id. at 2.
 {¶ 30} Although we agree with this statement, speed, combined with all other surrounding circumstances pertaining to the time and place of the accident, can constitute recklessness. State v. Thomas (June 13, 1994), Butler App. No. CA93-030-46, at 3. The trial court specifically instructed the jury that "[e]xcessive speed in the operation of an automobile is not of itself sufficient to constitute an act of recklessness." Tr. Vol. III at 633-634. Juries are presumed to follow and obey the instructions given them by the trial court. State v. Franklin
(1991), 62 Ohio St.3d 118, 127. Therefore, based upon the specific instruction provided to the jury, we will presume the jury followed the trial court's statement that mere speed itself does not constitute reckless operation.
 {¶ 31} Accordingly, we conclude the evidence that appellant proximately caused the deaths of the two victims was not insufficient as a matter of law.
 {¶ 32} Appellant's First Assignment of Error is overruled.
 II {¶ 33} Appellant contends, in his Second Assignment of Error, the trial court erred when it overruled his motion for judgment of acquittal because he was entitled to such judgment as a matter of law. We disagree.
 {¶ 34} Crim.R. 29(A) governs motions for judgment of acquittal and provides as follows:
 {¶ 35} "The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. The court may not reserve ruling on a motion for judgment of acquittal made at the close of the state's case."
 {¶ 36} The standard to be used by a trial court in determining a Crim.R. 29 motion is set forth in State v. Bridgeman (1978),55 Ohio St.2d 261. The Bridgeman case provides:
 {¶ 37} "Pursuant to Crim.R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." Id. at syllabus.
 {¶ 38} An appellate court reviews a denial of a Crim.R. 29 motion for acquittal using the same standard used to review a sufficiency of the evidence claim. See State v. Carter (1995), 72 Ohio St.3d 545, 553, 1995-Ohio-104. We further note:
 {¶ 39} "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 40} In the matter currently before the Court, appellant moved for judgment of acquittal, as to both counts, at the close of the state's evidence. Tr. Vol. III at 581-586. The trial court overruled appellant's motion. Id. at 586. In support of his motion, appellant argued the state failed to produce evidence, in its case-in-chief, that he proximately caused the death of either victim by means of the reckless operation of a motor vehicle. We have addressed this argument in appellant's First Assignment of Error. Since the same standard of review applies for a sufficiency of the evidence argument and a motion for judgment of acquittal, we find, for the reasons stated in appellant's First Assignment of Error, the trial court did not err when it denied appellant's motion. Sufficient evidence exists to find that appellant proximately caused the deaths of the two victims.
 {¶ 41} Appellant's Second Assignment of Error is overruled.
 III {¶ 42} In his Third Assignment of Error, appellant contends the jury's verdict convicting him of two counts of aggravated vehicular homicide is against the manifest weight of the evidence. We disagree.
 {¶ 43} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Martin (1983),20 Ohio App.3d 172, 175. See also, State v. Thompkins (1997),78 Ohio St.3d 380. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175.
 {¶ 44} As in the previous two assignments of error, appellant maintains the state failed to prove, beyond a reasonable doubt, the deaths of the two victims were proximately caused by his reckless operation of a motor vehicle. Appellant also argues the state failed to prove, by competent and credible evidence, that he recklessly operated his motor vehicle.
 {¶ 45} For the reasons set forth in appellant's First Assignment of Error, we conclude the state presented sufficient evidence to establish that appellant proximately caused the deaths of the two victims. Further, we find the jury did not clearly lose its way and create a manifest miscarriage of justice requiring appellant's conviction to be reversed and a new trial ordered.
 {¶ 46} Appellant's Third Assignment of Error is overruled.
 IV {¶ 47} Appellant contends, in his Fourth Assignment of Error, the trial court failed to provide the jury with separate instructions regarding causation as to each victim and each defendant. We disagree.
 {¶ 48} Defense counsel did not object to the trial court's jury instructions as required by Crim.R. 30(A). This rule provides as follows:
 {¶ 49} "On appeal, a party may not assign as error the giving or the failure to give any instructions unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection."
 {¶ 50} However, under Crim.R. 52(B), "[p]lain error or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." In State v. Cooperrider (1983),4 Ohio St.3d 226, the Ohio Supreme Court discussed the application of the plain error doctrine in the context of an allegedly erroneous jury instruction. The Court stated:
 {¶ 51} "* * * [A]n erroneous jury instruction `does not constitute a plain error or defect under Crim.R. 52(B) unless, but for the error, the outcome of the trial clearly would have been otherwise.' State v. Long
(1978), 53 Ohio St.2d 91, 97. Additionally, the plain error rule is to be applied with utmost caution and invoked only under exceptional circumstances, in order to prevent a manifest miscarriage of justice." Id. at paragraph three of the syllabus.
 {¶ 52} Appellant argues that when the evidence in a joint trial, for two deaths, arising from the alleged reckless operation of motor vehicles is insufficient to establish joint criminal liability, the trial court must instruct the jury regarding the state's obligation to prove each element of the offenses, beyond a reasonable doubt, as to each defendant. Upon review of the jury instructions, we find the trial court instructed the jury that each defendant had to proximately cause each death. The pertinent portions of the jury instructions provide as follows:
 {¶ 53} "You must decide separately the question of the guilt or innocence of each of the two Defendants. If you cannot agree upon a verdict as to both of the Defendants, but do agree as to one, you must render a verdict as to the one upon whose guilt or innocence you do agree.
 {¶ 54} "You must separately consider the evidence applicable to each Defendant as though he were being separately tried and you must state your finding as to each Defendant uninfluenced by your verdict as to the other Defendant.
 {¶ 55} "The charges set forth in each count in the indictment constitute a separate and distinct matter. You must consider each count and the evidence applicable to each count separately and you must state your finding as to each count uninfluenced by your verdict as to the other count. The Defendant may be found guilty or not guilty of any one or more of the offenses charged. Tr. Vol. III at 638.
 {¶ 56} Based upon the above, we find the trial court did instruct the jury to consider each defendant as though he were being tried separately. The trial court also instructed the jury to consider each count and the evidence applicable to each count separately. We find the trial court did not commit plain error when it instructed the jury as it was clear that each defendant had to cause each death.
 {¶ 57} Appellant's Fourth Assignment of Error is overruled.
 {¶ 58} For the foregoing reasons, the judgment of the Court of Common Pleas, Perry County, Ohio, is hereby affirmed.
By: Wise, J. Boggins, P.J., and Edwards, J., concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Perry County, Ohio, is affirmed.
Costs assessed to Appellant.