OPINION
{¶ 1} This is an appeal by defendant-appellant, Jason T. Ferguson, from a judgment of sentence and conviction entered by the Franklin County Court of Common Pleas, following a jury trial in which appellant was found guilty of aggravated robbery, robbery, and kidnapping.
 {¶ 2} On March 23, 2006, appellant was indicted on two counts of aggravated robbery, in violation of R.C. 2911.01, four counts of robbery, in violation of R.C. 2911.02, *Page 2 
two counts of kidnapping, in violation of R.C. 2906.01, one count of receiving stolen property, in violation of R.C. 2913.51, one count of carrying a concealed weapon, in violation of R.C. 2923.12, one count of improper handling of firearms, in violation of R.C. 2923.16, and one count of having a weapon while under disability, in violation of R.C. 2923.13. Each of the aggravated robbery, robbery, and kidnapping counts also contained firearm specifications pursuant to R.C. 2941.141 and2941.145.
 {¶ 3} The trial court granted appellant's pre-trial motion to sever Counts 1 through 8 of the indictment from Counts 9 through 12 for purposes of trial. On June 18, 2007, the matter came for trial before a jury on Counts 1 through 8 (charging appellant with aggravated robbery, robbery, and kidnapping).
 {¶ 4} During its case-in-chief, the state presented the following evidence. Mary Gilbert and her son, Ronshea Gilbert ("Ronshea"), reside at 1099 Lawrence Drive, Columbus. Gilbert sometimes refers to her son as "Boo." (Tr. 64.) On March 6, 2006, Gilbert and Ronshea were at home, and Gilbert's godson, Darby Clark, came over to the house to play video games with Ronshea. Later that day, Vincent Martin, a friend of Ronshea, also came over to the residence.
 {¶ 5} That evening, Clark and Ronshea were playing a video game when Ronshea received a two-way phone call from appellant and Gilbert's stepdaughter, Keona Alexander. During the phone conversation, appellant told Ronshea about an individual on the west side of town who had a Monte Carlo for sale, and appellant provided Ronshea with an address. After speaking with appellant, Ronshea told his mother he was leaving the house. *Page 3 
 {¶ 6} Gilbert testified that Clark and Martin remained at the residence with her after Ronshea left the house. Later, Martin was getting ready to leave, but there was a knock at the door. Gilbert went to the door, and someone identifying himself as "Vincent" asked if Ronshea was there. Gilbert stated, "no, he just left. He'll be back in a few minutes." (Tr. 70.) Gilbert did not know anyone named Vincent except her son's friend, Vincent Martin. Gilbert closed the door and phoned Ronshea to ask if he knew of a Vincent, but her son indicated he did not know this individual.
 {¶ 7} Martin then left the house, and Clark went upstairs to Ronshea's room. Gilbert, who was still downstairs, began playing a video game when she noticed someone had entered the house. Gilbert stated that it is common for her son's friends to enter the house unannounced. This individual asked if "Boo" (Ronshea) was there, and Gilbert said no. (Tr. 73.) Gilbert, who was still playing the video game, thought the person was leaving the house, and she "didn't think anything of it." (Tr. 73.) The individual, however, then put his hand on Gilbert's mouth and stuffed a rag in her mouth.
 {¶ 8} At trial, Gilbert identified appellant as her assailant, who she also knew as "Chesko." (Tr. 75.) Gilbert had met appellant for the first time a week earlier when he came over to her house with Gilbert's stepdaughter, Alexander, who appellant was dating at the time.
 {¶ 9} Gilbert began punching the assailant, but appellant pulled out a gun and stated, "we can do this the easy way or we can do it the hard way." (Tr. 75.) Appellant then put the gun to Gilbert's head and forced her to stand up and walk toward the kitchen. As Gilbert was walking through the kitchen she looked out the kitchen window and noticed someone standing outside. *Page 4 
 {¶ 10} Appellant, still holding the rag to Gilbert's mouth, directed her to walk downstairs to the basement. Gilbert, who suffered from knee problems, pointed toward her leg to indicate to appellant that she needed support to go down the stairs. When they reached the basement, appellant tore a t-shirt and tied Gilbert's hands behind her back. Appellant tied another shirt around Gilbert's head. Appellant then ordered Gilbert to lie down on the floor. There was a tire in the basement, and appellant placed the tire over Gilbert's legs. Gilbert testified that the last words appellant stated to her that evening were "Ms. Lady." (Tr. 83.) Gilbert recalled that appellant had called her "Ms. Lady" when they first met a week earlier.
 {¶ 11} Appellant went upstairs, and Gilbert heard him open the back door and let someone else inside the house. Gilbert then heard these individuals "going up and down stairs, running in and out of the back door several times." (Tr. 82.) She later heard a voice announce "Columbus Police," and Gilbert eventually was able to free her hands and scream for help, prompting a police officer to come downstairs and assist her. (Tr. 85.)
 {¶ 12} Following the incident, Gilbert discovered that some of her son's money and other property were missing from the residence. Gilbert was subsequently shown a photo array, but she was unable to identify her assailant from the photographs. At trial, Gilbert stated she was positive appellant was her assailant.
 {¶ 13} Darby Clark, age 19, also testified on behalf of the state regarding the events of March 6, 2006. That evening, Clark was at Gilbert's house playing video games with Ronshea when Ronshea received a phone call. Ronshea indicated he needed to *Page 5 
leave to pick something up, and that he would return. After Ronshea left, Martin came over to the house, and Clark and Martin played video games.
 {¶ 14} Clark later went upstairs to Ronshea's room, while Martin remained downstairs. Clark came downstairs a short time later, and Martin was sitting on a couch. Clark also observed appellant standing in the living room at that time. Clark testified that he immediately recognized appellant that evening. Clark had met appellant on a few prior occasions, and he knew that Ronshea's stepsister was dating appellant. Martin indicated he was going to leave, so Clark shook his hand. Clark then went back upstairs, while appellant remained downstairs.
 {¶ 15} About five minutes later, as Clark was using a computer in Ronshea's room, appellant came upstairs and pointed a gun at Clark. Clark described the weapon as a "shotgun-rifle-type" with a scope. (Tr. 152.) Appellant pulled Clark to the ground and told him "a whole bunch of shit like what he was going to do. He was going to tie me up and put a bag over my head." (Tr. 151.) Appellant began asking Clark "where stuff was at." (Tr. 152.)
 {¶ 16} Appellant took an extension cord and tied Clark's hands behind his back. Appellant then put a pillow over Clark's head. Shortly thereafter, Clark heard another individual inside the house with appellant. Appellant and the other person were pulling drawers out and "[t]hrowing stuff around." (Tr. 153.) Appellant continued asking Clark "where stuff was at." (Tr. 153.) The assailants also took Clark's cell phone from his pocket. After a few minutes, appellant and the other person left, and Clark was able to get his hands untied. Clark exited the house from an upstairs window and ran to a nearby store to phone the police. *Page 6 
 {¶ 17} Ronshea also testified on behalf of the state about the events of March 6, 2006. After receiving a call from appellant that evening regarding a Monte Carlo, Ronshea drove down the street to pick up a friend. He then drove to the address he had been given by appellant. When he knocked on the door, however, the residents indicated they did not know anything about a car for sale.
 {¶ 18} Ronshea tried to call appellant back, but appellant's phone was beeping. Ronshea eventually contacted appellant, and appellant asked him how many minutes it would take him to get back home. Ronshea responded he would be there in about five or ten minutes, and appellant stated "okay, cool." (Tr. 196.) Ronshea observed police officers when he returned to his mother's residence. Clark approached him and stated that "his [Ronshea's] sister's boyfriend just came in there and robbed the house and tied him [Clark] up." (Tr. 196.) Ronshea later discovered that his digital camera and $600 were missing from the house.
 {¶ 19} Ronshea testified that the first time he met appellant was at his sister's residence, and that appellant "tried to intimidate me." (Tr. 207.) Appellant informed Ronshea about "robberies and stuff, he just told me * * * how he would go in there and how he would drive his truck there * * * [and] how he would like struggle with them and beat them up." (Tr. 208-209.)
 {¶ 20} Columbus Police Officers James Jude and Keith Abel were dispatched to 1099 Lawrence Avenue on March 6, 2006. When the officers arrived at the location, an individual told them he had escaped from the second floor window; this individual also informed the officers that another person might still be inside the house. The officers *Page 7 
entered the house and discovered a woman downstairs with a tire on top of her legs, her hands tied, and a cloth stuffed in her mouth.
 {¶ 21} Columbus Police Detective Brian Boesch investigated the matter and interviewed various individuals on March 15, 2006. A photo array was prepared and shown to Gilbert. Appellant's picture was photograph No. 5. Gilbert thought three of the pictures, including photograph No. 5, bore a resemblance to her assailant, but she could not narrow it down for a definitive answer. The detective showed the photo array to Clark, who almost immediately picked out appellant's photograph from the array. Ronshea was also shown the photo array, and picked out appellant's photograph.
 {¶ 22} Following deliberations, the jury returned verdicts finding appellant guilty of aggravated robbery under Count 1, robbery under Count 2, and kidnapping under Count 8. The jury also found appellant guilty of the firearm specifications attached to those counts. The jury found appellant not guilty of robbery under Counts 3, 5, and 6, not guilty of aggravated robbery under Count 4, and not guilty of kidnapping under Count 7. During the sentencing hearing, the prosecution requested a nolle prosequi as to Counts 9, 10, 11, and 12 of the indictment, which the court granted.
 {¶ 23} The trial court sentenced appellant by entry filed July 26, 2007. The court imposed a sentence of six years as to Count 1, with an additional three-year sentence for the firearm specification. The court imposed a sentence of six years on Count 2, and seven years on Count 8. The court ordered the sentences for Counts 1 and 2 to be served concurrently, and the sentences for Counts 1 and 8 to be served consecutively, for a total of 16 years. *Page 8 
 {¶ 24} On appeal, appellant sets forth the following four assignments of error for this court's review:
 FIRST ASSIGNMENT OF ERROR: The evidence was legally insufficient to support appellant's convictions for Aggravated Robbery, Robbery, and Kidnapping.
 SECOND ASSIGNMENT OF ERROR: The Court erroneously overruled appellant's motion for acquittal pursuant to Criminal Rule 29.
 THIRD ASSIGNMENT OF ERROR: Appellant's convictions were against the manifest weight of the evidence.
 FOURTH ASSIGNMENT OF ERROR: The trial court committed reversible error by allowing Ronshea Gilbert to testify to statements allegedly made by appellant regarding other criminal acts in that they were not admissions, not relevant, and where the prejudicial effect far outweighed any probative value.
 {¶ 25} On May 28, 2008, appellant filed a motion for leave to file a supplemental brief, which this court granted by entry filed on June 2, 2008. In his supplemental brief, appellant sets forth a supplemental (fifth) assignment of error for review:
 FIFTH ASSIGNMENT OF ERROR: Appellant's due process rights, constitutional right to grand jury indictment and to notice of all the essential elements for which he was charged were violated by the state's failure to include a mens rea element into the counts for which he was convicted.
 {¶ 26} Appellant's first, second, third, and fifth assignments of error are interrelated and will be considered together. Under these assignments of error, appellant challenges his convictions as not supported by sufficient evidence, including the related assertion that the trial court erred in refusing to grant his Crim. R. 29 motion for judgment of acquittal, and he also challenges his convictions as against the manifest weight of the evidence. Finally, appellant's fifth assignment of error asserts that Counts 1 and 2 of the *Page 9 
indictment failed to allege the required mental element of recklessness, thereby requiring reversal of the aggravated robbery and robbery convictions based upon the Ohio Supreme Court's recent decision inState v. Colon, 118 Ohio St.3d 26, 2008-Ohio-1624.
 {¶ 27} In State v. Darrington, Franklin App. No. 06AP-160,2006-Ohio-5042, at ¶ 15-16, this court discussed the applicable standards of review in considering a motion for judgment of acquittal, pursuant to Crim. R. 29, and a challenge based upon weight of the evidence, stating as follows:
 A motion for judgment of acquittal, pursuant to Crim. R. 29, tests the sufficiency of the evidence. State v. Knipp, Vinton App. No. 06CA641, 2006-Ohio-4704, at ¶ 11. Accordingly, an appellate court reviews a trial court's denial of a motion for acquittal using the same standard for reviewing a sufficiency of the evidence claim. State v. Barron, Perry App. No. 05 CA 4, 2005-Ohio-6108, at ¶ 38.
 Sufficiency of the evidence and weight of the evidence are distinct legal concepts. State v. Sexton, Franklin App. No. 01AP-398, 2002-Ohio-3617. In Sexton, at JJ30-31, this court discussed those distinctions as follows:
 To reverse a conviction because of insufficient evidence, we must determine as a matter of law, after viewing the evidence in a light most favorable to the prosecution, that a rational trier of fact could not have found the essential elements of the crime proven beyond a reasonable doubt. * * * Sufficiency is a test of adequacy, a question of law. * * * We will not disturb a jury's verdict unless we find that reasonable minds could not reach the conclusion the jury reached as the trier of fact. * * *
 We will neither resolve evidentiary conflicts in the defendant's favor nor substitute our assessment of the credibility of the witnesses for the assessment made by the jury. * * * A conviction based upon legally insufficient evidence amounts to a denial of due process, * * * and if we sustain appellant's insufficient evidence claim, the state will be barred from retrying appellant. * * * *Page 10 
 A manifest weight argument, by contrast, requires us to engage in a limited weighing of the evidence to determine whether there is enough competent, credible evidence so as to permit reasonable minds to find guilt beyond a reasonable doubt and, thereby, to support the judgment of conviction. * * * Issues of witness credibility and concerning the weight to attach to specific testimony remain primarily within the province of the trier of fact, whose opportunity to make those determinations is superior to that of a reviewing court. * * * Nonetheless, we must review the entire record. With caution and deference to the role of the trier of fact, this court weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether, in resolving conflicts in the evidence, the jury, as the trier of facts, clearly lost its way, thereby creating such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against a conviction. * * *
 {¶ 28} As indicated, the jury returned verdicts finding appellant guilty of aggravated robbery, robbery, and kidnapping. Appellant was convicted of aggravated robbery, pursuant to R.C. 2911.01(A)(1), and the elements of that offense are as follows: "No person, in attempting or committing a theft offense, * * * shall * * * [h]ave a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it[.]"
 {¶ 29} Robbery is defined under R.C. 2911.02 to provide:
 (A) No person, in attempting or committing a theft offense * * * shall do any of the following:
 (1) Have a deadly weapon on or about the offender's person or under the offender's control;
 (2) Inflict, attempt to inflict, or threaten to inflict physical harm on another;
 (3) Use or threaten the immediate use of force against another. *Page 11 
 {¶ 30} The elements of kidnapping, as defined under R.C. 2905.01(A)(2), include: "No person, by force, threat, or deception * * * shall * * * restrain the liberty of the other person * * * [t]o facilitate the commission of any felony or flight thereafter[.]"
 {¶ 31} We initially address arguments raised under appellant's supplemental brief (appellant's fifth assignment of error). Relying upon the Ohio Supreme Court's recent decision in Colon, supra, appellant contends that Counts 1 and 2 of the indictment, charging him with aggravated robbery and robbery, were constitutionally defective because both counts omitted the mens rea element of recklessness. Appellant argues that the holding in Colon mandates reversal of his convictions for those offenses.
 {¶ 32} Under the facts in Colon, the defendant was convicted of robbery under R.C. 2911.02(A)(2), and the indictment in that case charged the defendant as follows: "`[I]n attempting or committing a theft offense, as defined in Section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense upon [the victim, the defendant did] inflict, attempt to inflict, or threaten to inflict physical harm on [the victim].'" Id., at ¶ 2. The defendant inColon appealed his conviction, asserting that the indictment was defective because it did not expressly charge the mens rea element of the crime of robbery. The court of appeals affirmed the robbery conviction, holding that the defendant, pursuant to Crim. R. 12(C)(2), waived the argument that his indictment was defective by failing to raise that issue before the trial court.
 {¶ 33} On further appeal, the Ohio Supreme Court reversed. InColon, supra, at ¶ 10-15, the court first addressed the language of the indictment, holding in part:
 There is no dispute that the defendant's indictment was defective. The indictment purportedly charged the defendant *Page 12 
with robbery in violation of R.C. 2911.02(A)(2), but the indictment omitted a mens rea element for the actus reus element stated in subsection (2): "Inflict, attempt to inflict, or threaten to inflict physical harm on another."
 While the robbery statute does not expressly state the degree of culpability required for subsection (2), the mental state of the offender is a part of every criminal offense in Ohio, except those that plainly impose strict liability. * * * Under R.C. 2901.21(A)(2), in order to be found guilty of a criminal offense, a person must have "the requisite degree of culpability for each element as to which a culpable mental state is specified by the section defining the offense."
 R.C. 2901.21(B) addresses both strict-liability statutes and those statutes, like the robbery statute (R.C. 2911.02), that do not expressly state a culpable mental state. * * * R.C. 2901.21(B) states that "[w]hen the section defining an offense does not specify any degree of culpability, and plainly indicates a purpose to impose strict criminal liability for the conduct described in the section, then culpability is not required for a person to be guilty of the offense. When the section neither specifies culpability nor plainly indicates a purpose to impose strict liability, recklessness is sufficient culpability to commit the offense."
 Thus, "recklessness is the catchall culpable mental state for criminal statutes that fail to mention any degree of culpability, except for strict liability statutes, where the accused's mental state is irrelevant. However, for strict liability to be the mental standard, the statute must plainly indicate a purpose to impose it."* * *
 R.C. 2911.02(A)(2) does not specify a particular degree of culpability for the act of "inflict[ing], attempt[ing] to inflict, or threaten[ing] to inflict physical harm," nor does the statute plainly indicate that strict liability is the mental standard. As a result, the state was required to prove, beyond a reasonable doubt, that the defendant recklessly inflicted, attempted to inflict, or threatened to inflict physical harm.
 In this case, the indictment failed to charge that the physical harm was recklessly inflicted. * * * *Page 13 
 {¶ 34} Having found the indictment defective, the Supreme Court inColon next addressed "whether an indictment that fails to include the mens rea of the offense charged may be challenged for the first time on appeal." Id., at ¶ 19. The court concluded that "when an indictment fails to charge a mens rea element of a crime and the defendant fails to raise that defect in the trial court, the defendant has not waived the defect in the indictment." Id., at ¶ 45. The majority in Colon utilized structural-error analysis, rather than the doctrine of plain error, to find that the indictment did not meet constitutional requirements as "it did not include all the essential elements of the offense charged," and thus "the defendant was not properly informed of the charge so that he could put forth his defense." Id., at ¶ 28. The Supreme Court further stated that an indictment that omits the mens rea element of recklessness, thereby failing to charge the offense of robbery, is "an exception to the general rule stated in Crim. R. 12(C)." Id., at ¶ 37.
 {¶ 35} In the instant case, in addressing appellant's challenge of his convictions under Counts 1 (aggravated robbery) and 2 (robbery) based upon the holding in Colon, we initially consider whether the holding inColon implicates appellant's conviction for robbery. Appellant was indicted under Count 2 for robbery, pursuant to R.C. 2911.02(A)(2), the same provision at issue in Colon, and appellant contends that his conviction for robbery is indistinguishable from the facts ofColon.
 {¶ 36} A review of the indictment indicates that Count 2 did not include language alleging that appellant did "recklessly" inflict, attempt to inflict or threatened to inflict physical harm on another, nor did the jury instructions include "recklessly" as the mens rea under R.C. 2911.02(A)(2). Such omissions would appear to require reversal under Colon. *Page 14 
 {¶ 37} As noted by the state, however, and unlike the facts inColon, Count 2 of the indictment also charged, in the alternative, that appellant committed robbery under R.C. 2911.02(A)(1), i.e., that the defendant, in attempting or committing a theft offense, did have a deadly weapon on or about his person or under his control. Further, the trial court gave a robbery instruction which encompassed the provisions of both R.C. 2911.02(A)(1) and (A)(2).
 {¶ 38} The holding in Colon did not address whether recklessness is the mens rea for robbery under R.C. 2911.02(A)(1). The Ohio Supreme Court, however, has previously addressed whether recklessness is an element of robbery under that provision. In State v. Wharf (1999),86 Ohio St.3d 375, the appellant was indicted for aggravated robbery, in violation of R.C. 2911.01(A)(1), as well as robbery, in violation of R.C. 2911.02(A)(1). At trial, the appellant proposed a jury instruction that, "before the jury could find appellant guilty of robbery, they must find that appellant acted recklessly in having a deadly weapon on or about his person." (Emphasis sic.) Id., at 376. The trial court declined to give the proposed jury instruction, and the appellant was convicted. On appeal, the appellant asserted that the trial court erred in failing to instruct the jury that "recklessly" was the required mental state for the deadly weapon element of robbery under R.C. 2911.02(A)(1). The appellate court rejected the appellant's argument and affirmed, but entered an order certifying a conflict with judgments of other courts of appeals.
 {¶ 39} In Wharf, supra, the Ohio Supreme Court held that "the General Assembly intended that a theft offense, committed while an offender was in possession or control of a deadly weapon, is robbery and no intent beyond that required for the theft offense must be proven." Id., at 377. Further, the court held, "by employing language making mere *Page 15 
possession or control of a deadly weapon, as opposed to actual use or intent to use, a violation, it is clear to us that the General Assembly intended that R.C. 2911.02(A)(1) be a strict liability offense." Id., at 378. Accordingly, because the Ohio Supreme Court has determined that R.C. 2911.02(A)(1) is a strict liability offense, and that the deadly weapon element does not require the mens rea of recklessness, we find the provisions of that section of the robbery statute to be unaffected by the holding in Colon.
 {¶ 40} As noted, Count 2 of the indictment in the instant case charged robbery in the alternative, i.e., in violation of R.C. 2911.02(A)(1) and/or 2911.02(A)(2). The jury returned a guilty verdict as to Count 2 and, in addition to the robbery conviction, the jury also found appellant guilty of aggravated robbery under R.C. 2911.01(A)(1). The offense of robbery under R.C. 2911.02(A)(1) is a lesser-included offense of aggravated robbery under R.C. 2911.01(A)(1). See State v. Smith, Trumbull App. No. 2005-T-0080; 2006-Ohio-4669, at ¶ 36; State v.Schoonover (Sept. 21, 1998), Adams App. No. 97 CA 647 (holding that robbery, as defined in R.C. 2911.02[A][1], is a lesser-included offense of aggravated robbery as set forth in R.C. 2911.01[A][1]).[1]
 {¶ 41} In the present case, in finding appellant guilty of aggravated robbery under R.C. 2911.01(A)(1), the jury necessarily found that the state proved all the elements of the lesser-included offense of robbery under R.C. 2911.02(A)(1). This is reinforced by the fact the jury also returned a guilty verdict on the firearm specifications under Count 2. Thus, in light of the verdicts rendered, and because appellant's conviction under *Page 16 
R.C. 2911.02(A)(1) did not require the mens rea of recklessness, we do not find that Colon mandates reversal of appellant's conviction for robbery.
 {¶ 42} We next address appellant's contention that his conviction for aggravated robbery, under R.C. 2911.01(A)(1), is subject to reversal based upon the holding in Colon. Again, the elements of aggravated robbery under R.C. 2911.01(A)(1) are: "No person, in attempting or committing a theft offense, * * * shall * * * [h]ave a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it[.]"
 {¶ 43} The indictment charging appellant under Count 1 included language alleging that appellant, in attempting or committing a theft offense as defined in R.C. 2913.01, "in respect to Mary Gilbert, or in fleeing immediately after the attempt or offense did have a deadly weapon, to wit: a handgun, on or about his person or under his control, and did display the weapon, and/or did brandish the weapon, and/or did indicate that he did possess the weapon, and/or did use the weapon[.]" The trial court instructed the jury in part that, in order to find appellant guilty of aggravated robbery, "you must find beyond a reasonable doubt that * * * the defendant, in attempting or committing a theft offense, did have a deadly weapon on or about his person or under his control, and the defendant displayed and/or brandished and/or used and/or indicated that he had the weapon." (Tr. 321.) The trial court further instructed the jury that, as to the offense of theft, the state must prove that "the defendant with purpose to deprive the owner of property knowingly obtained or exerted control over the property without the consent of the owner Mary Gilbert or the person authorized to give consent." (Tr. 321.) *Page 17 
 {¶ 44} In its response to appellant's supplemental brief, the state argues that the holding in Colon is inapplicable to the offense of aggravated robbery under R.C. 2911.01(A)(1). Specifically, relying uponWharf, supra, the state argues that the deadly weapon element of that section does not require proof of recklessness.
 {¶ 45} We have noted above that robbery under R.C. 2911.02(A)(1) is a lesser-included offense of aggravated robbery under R.C. 2911.01(A)(1). Both statutes require the offender to have a deadly weapon, while the aggravated robbery statute contains an additional element not required under the robbery statute, i.e., that the offender brandish, use, display or indicate that he or she has a weapon. Smith, supra, at ¶ 33. Arguably, there is dicta in Wharf suggesting that this additional element may distinguish, for purposes of analyzing the requisite criminal intent, the offenses of aggravated robbery under R.C. 2911.01(A)(1) and robbery under R.C. 2911.02(A)(1). See Wharf, supra, at 379 ("A violation of R.C. 2911.02[A][1] will also be found if the offender has a deadly weapon on or about his person, or under his control, while fleeing after such offense or attempt. Thus, no use,display, or brandishing of a weapon, or intent to do any of theaforementioned acts, is necessary according to the plain language of thestatute"). (Emphasis sic.)
 {¶ 46} We note, however, that although Wharf involved an examination of R.C. 2911.02(A)(1), its holding has been held applicable to R.C. 2911.01(A)(1). See State v. Kimble, Mahoning App. No. 06 MA 190,2008-Ohio-1539 (relying on Wharf for proposition that the only mens rea the state must prove is that required for theft in finding evidence sufficient to prove complicity to commit aggravated robbery under R.C. 2911.01[A][1]). *Page 18 
 {¶ 47} Further, while not binding legal authority, the Ohio Jury Instructions are "helpful as an example of the generally accepted interpretation" of Ohio statutes. State v. Gardner, Slip Opinion No. 2008-Ohio-2787, at ¶ 97 (Lanzinger, J., dissenting). See, also,State v. Mullins, Montgomery App. No. 22301, 2008-Ohio-2892, at ¶ 23
("Ohio Jury Instructions is a compendium of standard instructions prepared by the Jury Instructions Committee of the Ohio Judicial Conference, and is generally followed and applied by Ohio's courts").
 {¶ 48} Following the Ohio Supreme Court's decision in Colon, the Ohio Jury Instructions Committee ("the Committee") revised, through provisional instructions, the jury instructions for aggravated robbery, robbery, and aggravated burglary, in order to comport withColon. In revising the jury instruction for aggravated robbery, the committee inserted the term "recklessly" to the provisions of R.C. 2911.01(A)(3), i.e., that the defendant, while committing or attempting to commit a theft offense "recklessly" inflicted or attempted to inflict serious physical harm on the victim. 4 Ohio Jury Instructions (2008), Section 511.01(A)(3) (Revised 5/3/08). Notably, however, the Committee left unchanged the prior version of the instructions for aggravated robbery under R.C. 2911.01(A)(1), which instructed in part that, before finding a defendant guilty, the jury must find, beyond a reasonable doubt, that the defendant, while committing or attempting to commit a theft offense under R.C. 2913.01(K), "had a deadly weapon (on or about his/her person) (under his/her control) and (displayed) (brandished) (indicated that he/she possessed) (used) the weapon." 4 Ohio Jury Instructions (2007), Section 511.01(A)(1).
 {¶ 49} As part of the Comment to the revised instruction for aggravated robbery, the Committee cited Wharf, supra, for the proposition that it is unnecessary "to prove *Page 19 
`recklessness' or any specific mental state with regard to the deadly weapon element of the offense of robbery." The Committee further noted it "believes this decision [Wharf] applies by analogy to R.C. 2911.01(A)(1)."
 {¶ 50} While not binding on this court, we find persuasive the Committee's reliance upon Wharf (holding that R.C. 2911.02[A][1] requires no mens rea other than that required for the theft offense) as analogous to the provisions of R.C. 2911.01(A)(1). In the instant case, as appellant was charged with aggravated robbery under R.C. 2911.01(A)(1), and because a violation of that provision requires no intent beyond that required for the theft offense, the state did not err by omitting the mens rea of recklessness in the indictment.Wharf, supra, at 377. Thus, we find the holding in Colon to be inapplicable to appellant's conviction for aggravated robbery under R.C. 2911.01(A)(1).
 {¶ 51} We now consider whether the state provided sufficient evidence to support appellant's convictions for aggravated robbery under R.C. 2911.01(A)(1), robbery under R.C. 2911.02(A)(1), and kidnapping under R.C. 2905.01(A)(2). In reviewing appellant's sufficiency claim, the record indicates that the state presented testimony by Gilbert identifying appellant as her assailant during the events of March 6, 2006. Gilbert testified that appellant put his hand over her mouth and stuffed a rag in her mouth. When Gilbert resisted, appellant brandished a weapon and told her "we can do this the easy way or we can do this the hard way." Appellant put the weapon to Gilbert's head and walked her through the kitchen and down the stairs, where he ordered her to lie on the floor. Appellant tied Gilbert's hands behind her back and placed a tire on her legs. Gilbert *Page 20 
subsequently heard appellant open a door to allow another individual to enter her residence.
 {¶ 52} Clark also identified appellant as his assailant. Clark testified that he was upstairs using a computer when appellant appeared and pointed a weapon at him and pulled him to the ground. Appellant asked Clark "where stuff was at." Appellant then took an extension cord and tied Clark's hands behind his back; appellant also stuffed a pillow over Clark's head. Clark heard another individual enter the house, and appellant and the other individual began ransacking the residence. Clark testified that his cell phone was taken from his pocket during the incident.
 {¶ 53} The state also presented evidence that appellant phoned Ronshea earlier that evening and gave him false information about a car purportedly for sale, prompting Ronshea to leave the house just prior to the events at issue. Ronshea testified that, after returning to his residence that evening, his digital camera was missing as well as $600.
 {¶ 54} Here, construing the evidence most strongly in favor of the state, as we are required to do in considering a sufficiency challenge, the state presented sufficient evidence to prove the elements of aggravated robbery, robbery (under R.C. 2911.02[A][1]) and kidnapping. In light of our determination that the state presented sufficient evidence to support the convictions, we further find that the trial court did not err in denying appellant's motion for judgment of acquittal.
 {¶ 55} In asserting that his convictions were against the manifest weight of the evidence, appellant argues there were inconsistencies in the testimony of the state's key witnesses, including the accounts given by Gilbert and Clark. Specifically, appellant cites Clark's testimony that Martin arrived at Gilbert's house that evening after Ronshea had *Page 21 
left the residence following appellant's phone call. In contrast, Gilbert testified that Martin was already at the residence before Ronshea left. Clark further testified that he observed appellant and Martin in the house at the same time, while Gilbert's testimony indicated Martin was already gone when appellant entered the residence.
 {¶ 56} In response, the state argues that the trier of fact could have deemed it insignificant whether Martin arrived at the house before or after Ronshea left the residence. Similarly, the state contends, the jury could have viewed as unimportant whether appellant entered the house before or after Martin left that evening.
 {¶ 57} Based upon this court's review of the record, we agree with the state's argument that the discrepancies at issue are not substantial and do not undermine the credibility of these witnesses such that the evidence weighs against the conviction. Under Ohio law, in a criminal or civil case "the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." State v.DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. Further, a criminal defendant "is not entitled to a reversal on manifest weight grounds merely because inconsistent evidence was presented at trial." State v. Timmons, Franklin App. No. 04AP-840, 2005-Ohio-3991, at ¶ 10. Rather, "[t]he trier of fact is in the best position to take into account inconsistencies, along with the witnesses' manner and demeanor, and determine whether the witnesses' testimony is credible." Id.
 {¶ 58} Here, the inconsistencies by the witnesses did not render their testimony otherwise incredible as a matter of law; rather, at most, they raised credibility issues for the jury. Further, the jury may have believed that one of the witnesses had a faulty memory on the question of who was inside Gilbert's house prior to the robbery, but still *Page 22 
found the testimony of that witness otherwise credible. In any event, we accord deference to the trier of fact who, having had the opportunity to view the witnesses and consider their credibility, obviously found any inconsistencies to be immaterial.
 {¶ 59} Appellant also cites Gilbert's inability to identify appellant from a photographic array. As noted under the facts, when a police detective showed Gilbert the photo array, she thought three of the pictures (including appellant's photograph) may have looked like her assailant, but she was unable to narrow them down further. Gilbert, however, made an in-court identification of appellant as her assailant.
 {¶ 60} This court has previously held that the inability of a witness to make an identification based upon a black-and-white photo array does not discredit a witnesses' in-court identification. State v.Johnson, 163 Ohio App.3d 132, 2005-Ohio-4243, at ¶ 57.
 {¶ 61} In the present case, regarding her in-court identification, Gilbert testified she was "sure" appellant was her assailant. (Tr. 104.) Gilbert stated, "I know who I saw. Not a day goes by that I don't see his face." (Tr. 104.) Defense counsel had the opportunity to cross-examine Gilbert about her inability to identify appellant from the photographic array, and Gilbert offered an explanation as to why she had difficulty choosing appellant from the photo array. Further, the photo array was admitted into evidence as an exhibit. Under these circumstances, it was within the province of the trier of fact to assess the credibility of her in-court identification by comparing appellant's photograph to his in-court appearance. State v. Dennis, Franklin App. No. 05AP-1290, 2006-Ohio-5777, at ¶ 13. Finally, we note that the other victim, Clark, was able to pick out appellant's picture from the photo array, and he also made an in-court identification of appellant. *Page 23 
 {¶ 62} Based upon this court's review, we find that the verdicts were not against the manifest weight of the evidence and the jury did not lose its way and create a manifest miscarriage of justice. Accordingly, finding no merit to appellant's sufficiency and manifest weight arguments, and finding that appellant's convictions are not subject to reversal under Colon, supra, appellant's first, second, third, and fifth assignments of error are overruled.
 {¶ 63} Under his fourth assignment of error, appellant contends the trial court erred in allowing Ronshea to testify as to statements allegedly made by appellant regarding other criminal activity. Appellant asserts that such "other acts" testimony was neither admissible nor relevant, and that its admission was prejudicial.
 {¶ 64} By way of background, during the state's direct examination of Ronshea, defense counsel raised an objection to a question regarding whether appellant ever talked to Ronshea about carrying a weapon. Out of the hearing of the jury, the prosecution indicated that appellant had made prior statements to Ronshea about "what he does." (Tr. 205.) The trial court ruled that the state would have to lay a proper foundation to explore this line of questioning. Defense counsel subsequently raised a further objection when Ronshea testified about an incident at his sister's house in which, according to Ronshea, appellant "tried to intimidate me." (Tr. 207.) The prosecutor argued that such testimony was admissible under Evid. R. 404(B) as other acts tending to prove identity and modus operandi. The trial court overruled the objection. Ronshea then testified that appellant had told him "[a]bout the robberies." (Tr. 208). Specifically, appellant related that he would drive a truck to someone's house, "struggle with them and beat them up." (Tr. 209.) *Page 24 
 {¶ 65} In general, the admission or exclusion of evidence rests within the sound discretion of the trial court. State v. Pleasant, Stark App. No. 2006 CA 00345, 2007-Ohio-5643, at ¶ 20. Evid. R. 404(B) provides that evidence of other crimes, wrongs, or acts "is not admissible to prove the character of a person in order to show action in conformity therewith," but it may be admissible for "other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Ohio law recognizes "that `other acts forming a unique, identifiable plan of criminal activity are admissible to establish identity under Evid. R. 404(B).'" State v.Noling, 98 Ohio St.3d 44, 2002-Ohio-7044, at ¶ 45. In this regard, "[i]n order `to be admissible to prove identity through a certain modusoperandi, other-acts evidence must be related to and share common features with the crime in question.'" Id., quoting State v. Lowe
(1994), 69 Ohio St.3d 527, paragraph one of the syllabus. Evid. R. 403(A) provides that, "[although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."
 {¶ 66} Regarding the general issue of admissibility, we find that the trial court did not abuse its discretion in ruling the evidence admissible as fitting under the exceptions under Evid. R. 404(B) as tending to prove identity and to demonstrate appellant's plan or scheme. As noted, the prosecution offered the evidence for the purpose of showing identity and modus operandi, and the testimony by Ronshea indicated that appellant had bragged about conduct similar to the allegations in the instant case. As also noted, appellant challenged Gilbert's identification, and, thus, the evidence was relevant inasmuch as the identity of the perpetrator was at issue. See State v. Holt (Jan. 15, *Page 25 
1992), Summit App. No. 15126. See, also, State v. Dickess,174 Ohio App.3d 658, 2008-Ohio-39, at ¶ 72 (evidence of other recent crimes that bore similarity to crimes charged in home invasion admissible under Evid. R. 404[B] where identity was at issue). Moreover, we find that evidence of similar home invasions "shared sufficient characteristics" with the crimes at issue such that the probative value outweighed any danger of unfair prejudice. State v. Bey (1999), 85 Ohio St.3d 487, 491.
 {¶ 67} Finally, even assuming error by the trial court in the admission of the evidence at issue, we find any error to be harmless. Here, the remaining evidence of appellant's involvement in the robbery at Gilbert's residence was overwhelming, and we do not find that the admission of the "other acts" testimony contributed to appellant's convictions. See State v. Jackson, Franklin App. No. 02AP-867,2003-Ohio-6183, at ¶ 32 ("if there is no reasonable probability that improperly admitted testimony concerning other acts contributed to the appellant's conviction, then the admission constitutes harmless error").
 {¶ 68} Accordingly, appellant's fourth assignment of error is without merit and is overruled.
 {¶ 69} Based upon the foregoing, appellant's first, second, third, fourth, and fifth assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is hereby affirmed.
Judgment affirmed.
BRYANT and PETREE, JJ., concur.
[1] In Schoonover, the court distinguished the Ohio Supreme Court's earlier decision in State v. Merriweather (1980), 64 Ohio St.2d 57 on the basis that, subsequent to Merriweather, "the Ohio General Assembly, with the enactment of Senate Bill 2, significantly revised Ohio's criminal code" to redefine what conduct constitutes aggravated robbery and robbery. *Page 1