OPINION
{¶ 1} Defendant-appellant, Dejuan L. Glover, appeals from a judgment of the Franklin County Court of Common Pleas convicting him of aggravated robbery with firearm specification and robbery.
 {¶ 2} According to the state's evidence, on the afternoon of August 28, 2006, while Joshua Vidor was making repairs to rental property that he owned on Bassett Avenue in Franklin County, Ohio, defendant and another person, Dante Hill, approached Mr. Vidor and robbed him at gunpoint. After robbing Mr. Vidor, defendant and Hill drove *Page 2 
away in Mr. Vidor's vehicle. During the early morning hours of the next day, defendant and Hill were apprehended after a police officer in Sheffield Lake, Ohio, discovered them asleep in Mr. Vidor's vehicle with two firearms that later were determined to be similar to the weapons used in the robbery.
 {¶ 3} By indictment filed on October 26, 2006, defendant was charged with one count of aggravated robbery with firearm specification; two counts of robbery, each with a firearm specification; and one count of having a weapon under disability.[1] Defendant pled not guilty to these charges and demanded a jury trial.[2]
 {¶ 4} At trial, after the state presented its evidence, defendant moved for acquittal pursuant to Crim. R. 29. The trial court denied this motion with regard to the charge of aggravated robbery with firearm specification, and as to the charges of robbery with firearm specifications; however, as to the charge of having a weapon under disability, the trial court granted defendant's Crim. R. 29 motion. Defendant did not testify on his own behalf and did not present any witnesses.
 {¶ 5} After deliberating, a jury delivered a verdict finding defendant guilty of aggravated robbery with firearm specification, a violation of R.C. 2911.01, and a felony of the first degree; and robbery, a violation of R.C. 2911.02(A)(2), and a felony of the second degree. At the sentencing hearing, defendant moved for acquittal and a new trial pursuant to Crim. R. 29 and 33, respectively. Denying both motions, the trial court imposed a seven-year prison term for his conviction for aggravated robbery and a *Page 3 
three-year prison term for defendant's conviction for the firearm specification. The trial court ordered the sentences to be served consecutively with each other. For purposes of sentencing, the trial court merged the sentence for defendant's robbery conviction with his sentence for aggravated robbery with firearm specification.
 {¶ 6} Defendant advances two assignments of error for our consideration:
 I. THE GUILTY VERDICT RENDERED BY THE JURY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 II. IT WAS INEFFECTIVE ASSISTANCE OF COUNSEL, IN VIOLATION OF APPELLANT'S DUE PROCESS RIGHTS, NOT TO REQUEST A SEPARATE TRIAL.
 {¶ 7} After the matter was submitted to this court, claiming thatState v. Colon, 118 Ohio St.3d 26, 2008-Ohio-1624 ("Colon I"), on reconsideration, State v. Colon ("Colon II"), Ohio St.3d, 2008-Ohio-3749
should be applied to the facts in his case, defendant's co-defendant moved for leave to file a supplemental brief, which this court granted. See, generally, State v. Hill, Franklin App. No. 07AP-889, 2008-Ohio-, at ¶ 7. Thereafter, this court sua sponte ordered defendant to file a supplemental brief addressing issues raised in Colon I. In his supplemental brief, relying on Colon I, defendant asserts his conviction for the offense of robbery under R.C. 2911.02(A)(2) must be reversed.
 {¶ 8} We begin by considering issues raised by defendant and the state in their supplemental briefs.
 {¶ 9} In Colon I, the Supreme Court of Ohio considered this question: "`Where an indictment fails to charge the mens rea element of the crime, and the defendant fails to raise that issue in the trial court, has the defendant waived the defect in the indictment?'" *Page 4 
Id. at ¶ 1. Answering in the negative, the Supreme Court concluded that the defendant did not waive the defect in the indictment.
 {¶ 10} In a single-count indictment, Vincent Colon was charged with robbery, a violation of R.C. 2911.02(A)(2), as follows: "`[I]n attempting or committing a theft offense, as defined in Section 2913.01
of the Revised Code, or in fleeing immediately after the attempt or offense upon [the victim, the defendant did] inflict, attempt to inflict, or threaten to inflict physical harm on [the victim].'" Id. at ¶ 2. At trial, when the court instructed the jury, the court summarized the elements of robbery under R.C. 2911.02(A)(2) as: "(1) `in attempting or committing a theft offense or in fleeing immediately after the attempt or offense,' (2) the defendant inflicted, or attempted to `inflict, or threatened to inflict physical harm upon [the victim].'" Id. at ¶ 3. The jury ultimately convicted Colon of robbery in violation of R.C. 2911.02(A)(2). Id.
 {¶ 11} Finding that the indictment against Colon was defective because it failed to charge that physical harm was recklessly inflicted, see id. at ¶ 10, 14, the Colon I court explained that "R.C. 2911.02(A)(2) does not specify a particular degree of culpability for the act of `[i]nflicting, attempting] to inflict, or threatening] to inflict physical harm,' nor does the statute plainly indicate that strict liability is the mental standard. As a result, the state was required to prove, beyond a reasonable doubt, that the defendant recklessly inflicted, attempted to inflict, or threatened to inflict physical harm." Id. at ¶ 14; see, also, id. at ¶ 13, quoting State v.Lozier, 101 Ohio St.3d 161, 2004-Ohio-732, at ¶ 21 (explaining that "`recklessness is the catchall culpable mental state for criminal statutes that fail to mention any degree of culpability, except for strict liability statutes, where the accused's mental state is irrelevant'"). *Page 5 
 {¶ 12} Recognizing that the matter before it could be decided by applying a plain-error analysis, the Colon I court nonetheless found that the defects in the indictment led to significant errors throughout the defendant's trial, and, therefore, structural-error analysis was appropriate. Id. at ¶ 23; see, also, id. at ¶ 20 (discussing structural error).
 {¶ 13} Finding that (1) the indictment failed to meet constitutional requirements because it failed to include the mens rea of the crime of robbery, id. at ¶ 28-29; (2) there was no evidence that the defendant had notice that the state was required to prove that defendant had been reckless in order to convict him of the crime of robbery, id. at ¶ 30; (3) the state did not argue that defendant's conduct in inflicting physical harm on the victim constituted reckless conduct, id. at ¶ 30; (4) the trial court failed to include the required mens rea in its instructions to the jury regarding the crime of robbery, id. at ¶ 31; (5) there was no evidence that the jury considered whether defendant had been reckless in inflicting, attempting to inflict, or threatening to inflict physical harm, as required under R.C. 2911.02(A)(2); and (6) during closing arguments, the prosecuting attorney treated robbery as a strict-liability offense, id. at ¶ 31, [3] the Colon I court concluded:
 In summary, the defective indictment in this case failed to charge all the essential elements of the offense of robbery and resulted in a lack of notice to the defendant of the mens rea required to commit the offense. This defect clearly permeated the defendant's entire criminal proceeding. The defendant did not receive a constitutional indictment or trial, and therefore the defective indictment in this case resulted in structural error. *Page 6 
Id. at ¶ 32. See, also, Colon II, at ¶ 6.[4]
 {¶ 14} Concluding that its holding, which provides that a defendant could challenge for the first time on appeal an indictment that omitted an essential element of a crime, protects a defendant's right to a grand jury indictment, id. at ¶ 39, the Colon I court rejected: (1) the state's arguments that Crim. R. 12(C) required objections based on defects in an indictment to be raised before trial, id. at ¶ 33-38; and (2) the state's claim that permitting defendants to challenge a defective indictment for the first time on appeal would encourage defendants to withhold their challenges until after trial, thereby resulting in inefficient proceedings. Id. at ¶ 41.
 {¶ 15} The Colon I court further stated:
 Applying Crim. R. 7(B) to this case, since the language of R.C. 2911.02(A)(2) does not include the mental element required to commit the offense, the indictment was required to be in "words sufficient to give the defendant notice of all the elements." Further, pursuant to State v. O'Brien [(1987), 30 Ohio St.3d 122], the defendant's indictment was required to include the term "recklessly" in order to properly charge the offense. It is not an unreasonable burden to require counsel for the state to ensure that the defendant receives the benefit of his fundamental constitutional protections, nor is it unreasonable to expect a trial judge to properly instruct the *Page 7 
jury regarding all the elements of the crime with which the defendant is charged.
 A defendant has a constitutional right to grand jury indictment and to notice of all the essential elements of an offense with which he is charged. The state must meet its duty to properly indict a defendant, and we will not excuse the state's error at the cost of a defendant's longstanding constitutional right to a proper indictment. When a defective indictment so permeates a defendant's trial such that the trial court cannot reliably serve its function as a vehicle for determination of guilt or innocence, the defective indictment will be held to be structural error. See State v. Perry, 101 Ohio St.3d 118, 2004-Ohio-297, 802 N.E.2d 643, at ¶ 17.
Id. at ¶ 43-44.
 {¶ 16} Accordingly, the Colon I court "[held] that when an indictment fails to charge a mens rea element of a crime and the defendant fails to raise that defect in the trial court, the defendant has not waived the defect in the indictment." Id. at ¶ 45; see, also, id. at syllabus.
 {¶ 17} Applying Colon I's holding to this case, even though in the trial court defendant failed to preserve his claim that the indictment against him was constitutionally defective, defendant's failure to preserve this claim of error does not preclude him from raising his claim of error here for the first time. Colon I, at ¶ 45; syllabus.
 {¶ 18} Finding that defendant is not precluded from raising a claim that the indictment against him was constitutionally defective, we must now consider whether the allegedly defective indictment so permeated defendant's trial such that the trial court could not reliably have served its function as a vehicle for determining defendant's guilt or innocence. See, e.g., Colon I, at ¶ 44. *Page 8 
 {¶ 19} Here, in its indictment against defendant and his co-defendant, as to the charge of robbery under R.C. 2911.02(A)(2), the grand jury charged: "[I]n violation of section 2911.02 of the Ohio Revised Code, in attempting or committing a theft offense in respect to Joshua Vidor, or in fleeing immediately after the attempt or offense, did have a deadly weapon on or about their person or under their control, and/or inflict, attempt to inflict, or threaten to inflict physical harm on another[.]"
 {¶ 20} As was the situation in Colon I, here the indictment failed to charge that physical harm was recklessly inflicted by defendant. And, as was the case in Colon I, with respect to the charge of robbery under R.C. 2911.02(A)(2), the indictment is constitutionally defective because it fails to include all the elements of the charge of robbery.
 {¶ 21} We further find that the trial court's instructions to the jury also were flawed. Here, following the presentation of evidence, the parties reviewed proposed jury instructions with the court. (Tr. Vol. I, at 143-150.) During this review of proposed jury instructions, the state made the following requests:
 MR. WODARCYK [Assistant Prosecuting Attorney]: I would also ask, Your Honor, that would I be proceeding on for purposes of argument on Count Two [robbery charge], would be did threaten to inflict physical harm on another. In other words, I'm eliminating the language about did have a deadly weapon. Because I think that just mirrors what's in the aggravated robbery definition.
 THE COURT: All right.
 MR. WODARCYK: So I'm just going to argue to this jury that this is a F-2 robbery because you threatened to inflict physical harm on him.
 THE COURT: Okay. *Page 9 
 MR. WODARCYK: So I'm eliminating the deadly weapon language.
 THE COURT: Did inflict, attempt to inflict or threaten to inflict physical harm on another, Joshua Vidor. All right.
 MR. WODARCYK: Yes. I would just say did. In respect to Joshua Vidor, I would just say did threaten to inflict. That's all. Just did threaten to inflict.
 THE COURT: Okay.
 MR. WODARCYK: Based on that change, I'd be asking for a dismissal as to the firearm spec at the bottom of that page.
 THE COURT: That would naturally and logically follow.
 MR. WODARCYK: So no firearm spec on Count Two.
 THE COURT: Okay.
 MR. WODARCYK: Okay. At the bottom of page six and the top of page seven, Your Honor, is the F-3 version of robbery.
 THE COURT: Yes.
 MR. WODARCYK: Which I don't believe needs to go back to this jury at all. Because this was either done with a gun or this was done with a threat of physical harm and I don't believe there's any dispute about that.
 THE COURT: So you're basically asking for a dismissal as to Count Three —
 MR. WODARCYK: Right.
 THE COURT: — in regards to both defendants.
 MR. WODARCYK: I guess I'm then moving to dismiss that F-3 version of robbery which talks about threat or use of force or using of force. *Page 10 
 THE COURT: All right. I take it there's no objection from the defense?
 MR. CHURCHILL [On Behalf of Defendant]: No, sir.
 MR. HALLEY [On Behalf of Co-Defendant Glover]:
No.
 THE COURT: All right.
Id. at 147-149.
 {¶ 22} The trial court thereafter instructed the jury as follows with respect to the robbery charge:
 Now, before you can find the defendant under consideration guilty of robbery, you must find beyond a reasonable doubt that on or about the 28th day of August, 2006, and in Franklin County, Ohio, that the individual defendant, that is, the defendant under consideration, in committing a theft offense in respect to Joshua Vidor, did threaten to inflict physical harm on Joshua Vidor.
 Now, I've already defined knowingly, purposely and theft offense, and of course those definitions apply equally here.
 Physical harm. I used the phrase did threaten to inflict physical harm on another. Physical harm to persons means any injury, illness or other physiological or bodily impairment regardless of its gravity or its duration. If you find that the State of Ohio has proven beyond a reasonable doubt-excuse me. If you find that the State of Ohio has proven as to the defendant under consideration all of the elements of robbery beyond a reasonable doubt, your verdict must be guilty as to that offense in regard to that defendant. If you find that the State of Ohio has failed to prove any one element of the offense of robbery as to the defendant under consideration, then your verdict must be not guilty as to that offense.
Id. at 187-188. (See, also, written jury instructions.)
 {¶ 23} Here, as was the case in Colon I, the trial court failed to include the necessary mens rea of recklessly for the offense of robbery under R.C. 2911.02(A)(2). *Page 11 
Furthermore, as was the situation in Colon I, there is no evidence whether the jury considered whether defendant was reckless in threatening to inflict physical harm to the victim.
 {¶ 24} Finally, during closing arguments, as to the offense of robbery, the assistant prosecuting attorney failed to make any reference to the requisite mens rea of "recklessly" and treated robbery as a strict-liability offense. During closing arguments, as to the offense of robbery, the assistant prosecuting attorney stated in part:
 * * * You're going to be given an instruction on a secondary crime. Remember, we are talking one robbery here. This wasn't two different incidents. We are talking one thing. But as so many of you know already there are things called lesser offenses. This is robbery. We call it robbery. * * *
 Again, we are saying that these defendants did it. We know that's in dispute. But other than that, it's in committing a theft offense that the defendants threatened to inflict physical harm. So once again we have like a mathematical equation. Do we have a theft? Of course we do. Combined with the threat to inflict physical harm, the pointing of what's presumably a gun, the comments about we are going to shoot you or should we shoot him. Those, ladies and gentlemen, I think common sense will dictate are threats of physical harm. You combine that threat with threat of physical harm and that equals the crime of robbery.
 * * * But I suggest to you based on these legal instructions, if you find that they, one or more of them are guilty of the crime of aggravated robbery then I submit to you, I've also proven this lesser offense which is Count Two, which is robbery. You can't have that without this.
(Tr. 156-158.) *Page 12 
 {¶ 25} Finding that the facts of this case are plainly similar to and substantially indistinguishable from those in Colon I, we therefore conclude that Colon I, as reconsidered in Colon II, applies to defendant's robbery conviction, and we further conclude the defective indictment so permeated defendant's trial such that the trial court could not reliably have served its function as vehicle for determining defendant's guilt or innocence. Accordingly, defendant's conviction for robbery under R.C. 2911.02(A)(2) cannot stand.[5]
 {¶ 26} Although the state concedes that Colon I applies to defendant's robbery conviction, the state claims that defendant suffered no prejudice from a Colon I error because defendant's robbery conviction merged with defendant's conviction for aggravated robbery. See, e.g., R.C. 2941.25; State v. Cabrales, 118 Ohio St.3d 54, 2008-Ohio-1625, at paragraph one of the syllabus, clarifying State v. Rance (1999),85 Ohio St.3d 632; State v. Madaris, Hamilton App. No. C-070287, 2008-Ohio-2470, at ¶ 36 (holding that crimes of aggravated robbery and robbery under R.C. 2911.02[A] are allied *Page 13 
offenses of similar import and, under the facts of that case, the defendant's conduct involved a single animus and a single crime).
 {¶ 27} The state's contention that defendant's robbery conviction and aggravated robbery conviction merged is not, however, supported by the plain language of the trial court's judgment. In its judgment, the trial court stated:
 The court hereby imposes the following sentence AS TO COUNT ONE SEVEN (7) YEARS WITH AN ADDITIONAL (AND CONSECUTIVE) THREE (3) YEARS FOR ONE FIREARM SPECIFICATION. COUNT TWO IS MERGED WITH COUNT ONE FOR SENTENCING PURPOSES. THE SENTENCE IS TO BE SERVED AT THE OHIO DEPARTMENT OF REHABILITATION AND CORRECTION.
(Sept. 28, 2007 Judgment Entry; emphasis sic.) Cf. Tr., Sentencing Hearing, Sept. 20, 2007, at 19.[6]
 {¶ 28} By plain language in its judgment, the trial court appears to have merged defendant's sentences, not defendant's convictions. The trial court's judgment also is devoid of any discussion regarding whether it considered aggravated robbery and robbery to be allied offenses of similar import, or whether defendant committed robbery and aggravated robbery with a single animus. *Page 14 
 {¶ 29} Additionally, even if the parties had a tacit understanding that defendant's convictions for robbery and aggravated robbery were merged by the trial court, we find the trial court's judgment is, at best, ambiguous as to whether defendant's convictions for robbery and aggravated robbery were merged as a result of the trial court's judgment.
 {¶ 30} "In Ohio a court speaks through its journal. Accordingly, it is imperative that the court's journal reflect the truth." State ex rel.Worcester v. Donnellon (1990), 49 Ohio St.3d 117, 118. "All courts have a clear legal duty to have their journals reflect the truth. All litigants have a clear legal right to have the proceedings they are involved in correctly journalized." Id. at 119.
 {¶ 31} Here, if the trial court intended to merge defendant's convictions for robbery and aggravated robbery, the plain language of the trial court's judgment does not appear to reflect such an intention. Accordingly, we cannot agree with the state's contention that defendant was not prejudiced because defendant's convictions for robbery and aggravated robbery allegedly were merged.
 {¶ 32} We do agree, however, with the state's contention thatColon I does not require reversal of defendant's aggravated robbery conviction.
 {¶ 33} First, in its reconsideration of Colon I, the Colon II court stated that it assumed that the facts that led to its opinion inColon I were "unique," id. at ¶ 6, and it "emphasize[d] that the syllabus in Colon I is confined to the facts in that case." Id. at ¶ 8. Furthermore, in reaching its holding in Colon I, the Supreme Court of Ohio construed division (A)(2) of robbery under R.C. 2911.02, not aggravated robbery under R.C. 2911.01. As an intermediate appellate court, we are therefore reluctant to expansively construe Colon I's
holding to statutes not considered by Colon I, especially sinceColon II *Page 15 
emphasized that the syllabus in Colon I is confined to the facts in that case. See, generally, James A. Keller, Inc. v. Flaherty (1991),74 Ohio App.3d 788, 792 (acknowledging that the Supreme Court of Ohio is the primary judicial policy maker and stating that "[a]s an intermediate appellate court, we should use caution in determining that the public policy of this state should be").
 {¶ 34} Second, in State v. Ferguson, Franklin App. No. 07AP-640,2008-Ohio-3827, this court recently discussed the application ofColon I to the crime of aggravated robbery under R.C. 2911.01(A)(1). Id. at ¶ 42-50. In Ferguson, this court ultimately found the holding ofColon I to be inapplicable to the appellant's conviction for aggravated robbery under R.C. 2911.01(A)(1). Id. at ¶ 50. FollowingFerguson, and adopting its reasoning, we therefore conclude that in this case defendant's aggravated robbery conviction under R.C. 2911.01(A)(1) also is unaffected by Colon I's holding. See, generally,Ferguson, at ¶ 42-50.
 {¶ 35} In sum, for the reasons set forth above, we therefore conclude that Colon I, as reconsidered in Colon II, requires reversal of defendant's conviction for the offense of robbery under R.C. 2911.02(A)(2), but does not require reversal of defendant's aggravated robbery conviction under R.C. 2911.01(A)(1).
 {¶ 36} Accordingly, finding that Colon I, as reconsidered in ColonII, requires reversal of defendant's robbery conviction under R.C. 2911.02(A)(2), we agree with defendant's contention that his robbery conviction cannot stand based on the reasoning in Colon I, as reconsidered in Colon II. Therefore, we find that such a determination renders moot defendant's contentions in his first assignment of error that his robbery conviction is against the manifest weight of the evidence. See, e.g., Schwab v. Lattimore, *Page 16 166 Ohio App.3d 12, 2006-Ohio-1372, at ¶ 10 (stating that "[w]hen circumstances prevent an appellate court from granting relief in a case, the mootness doctrine precludes consideration of those issues"). (Fn. omitted.)
 {¶ 37} Because defendant's first assignment of error as applied to defendant's conviction for robbery under R.C. 2911.02(A)(2) is moot, we therefore shall limit our consideration of defendant's first assignment of error to defendant's conviction for aggravated robbery with firearm specification.[7]
 {¶ 38} When presented with a manifest-weight claim in a criminal matter, an appellate court engages in a limited weighing of the evidence to determine whether the fact finder's verdict is supported by sufficient competent, credible evidence to permit reasonable minds to find guilt beyond a reasonable doubt. State v. Thompkins (1997),78 Ohio St.3d 380, 387, reconsideration denied, 79 Ohio St.3d 1451; State v.Conley (Dec. 16, 1993), Franklin App. No. 93AP-387; State v. Group,98 Ohio St.3d 248, 2002-Ohio-7247, at ¶ 77. "[W]eight of the evidence addresses the evidence's effect of inducing belief." State v.Wilson, 113 Ohio St.3d 382, 2007-Ohio-2202, at ¶ 25, citingThompkins, at 386-387. When presented with a manifest-weight claim, "a reviewing court asks whose evidence is more persuasive — the state's or the defendant's?" Wilson, at ¶ 25. "`When a court of appeals reverses a judgment of a trial court on the basis that the verdict is *Page 17 
against the weight of the evidence, the appellate court sits as a "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony.'" Id., quoting Thompkins, at 387, citingTibbs v. Florida (1982), 457 U.S. 31, 42, 102 S.Ct. 2211.
 {¶ 39} "The question for the reviewing court [in a manifest-weight claim] is `whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against conviction.'" Group, at ¶ 77, quoting State v. Martin (1983),20 Ohio App.3d 172, 175. See, also, Thompkins, at 387; id. at paragraph four of the syllabus (construing and applying Section 3[B][3], Article IV, Ohio Constitution) (holding that "[t]o reverse a judgment of the trial court on the weight of the evidence, when the judgment results from a trial by jury, a unanimous concurrence of all three judges on the court of appeals panel reviewing the case is required").
 {¶ 40} Although when reviewing a manifest-weight claim an appellate court engages in a limited weighing of the evidence, Thompkins, at 387;Conley, supra; Group, at ¶ 77, "[determinations of credibility and weight of the testimony remain within the province of the trier of fact." State v. Walters, Franklin App. No. 06AP-693, 2007-Ohio-5554, at ¶ 94, appeal not allowed (2008), 117 Ohio St.3d 1425, 2008-Ohio-969, citing State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. "The jury thus may take note of the inconsistencies and resolve them accordingly, `believ[ing] all, part or none of a witness's testimony.'" Walters, at ¶ 4, quoting State v. Raver, Franklin App. No. 02AP-604, 2003-Ohio-958, at ¶ 21, citing State v. Antill (1964),176 Ohio St. 61, 67. See, also, State v. Harris, Franklin App. No. 02AP-977, 2003-Ohio-2414, at ¶ 18. *Page 18 
 {¶ 41} R.C. 2911.01, aggravated robbery, provides in part:
 (A) No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:
 (1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it;
 (C) Whoever violates this section is guilty of aggravated robbery, a felony of the first degree.
 (D) As used in this section:
 (1) "Deadly weapon" and "dangerous ordnance" have the same meanings as in section 2923.11 of the Revised Code.
See, also, former R.C. 2913.01(K)(1)[8] (defining "theft offense," as among other things a violation of R.C. 2911.01, aggravated robbery, and R.C. 2911.02, robbery); R.C. 2923.11(A) (defining "deadly weapon" as "any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon").
 {¶ 42} "For purposes of establishing the crime of aggravated robbery, a jury is entitled to draw all reasonable inferences from the evidence presented that the robbery was committed with the use of a gun, and it is not necessary that the prosecution prove that the gun was capable of firing a projectile." State v. Vondenberg (1980), 61 Ohio St.2d 285, syllabus; see, also, id. at 288 (determining that "a gun designed for use as a *Page 19 
weapon may be considered a `deadly weapon' for purposes of sustaining a conviction of aggravated robbery, even though such gun is found to have been unloaded at the time of the robbery"); State v. Terry (May 15, 1986), Cuyahoga App. No. 50602.
 {¶ 43} In the present case, the state claimed defendant used a gun as a "firearm" when he committed aggravated robbery against Mr. Vidor. Cf.State v. Hicks (1984), 14 Ohio App.3d 25 (finding that a toy handgun is a "deadly weapon" under former R.C. 2923.11[A] because of its possible use as a bludgeon).
 {¶ 44} R.C. 2923.11(B) defines "firearm" as follows:
 (1) "Firearm" means any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant. "Firearm" includes an unloaded firearm, and any firearm that is inoperable but that can readily be rendered operable.
 (2) When determining whether a firearm is capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant, the trier of fact may rely upon circumstantial evidence, including, but not limited to, the representations and actions of the individual exercising control over the firearm.
 {¶ 45} When attempting to prove that a deadly weapon constitutes a firearm, the state is not required to produce the gun or offer direct evidence that the gun is operable. State v. Murphy (1990),49 Ohio St.3d 206; State v. Boddie (Dec. 28, 2001), Montgomery App. No. 18709; R.C. 2923.11(B). In Boddie, the Second District Court of Appeals explained:
 In proving that a deadly weapon constitutes a firearm, the State need not produce the gun or offer direct, empirical evidence that the gun is operable, that is, capable of expelling or propelling a projectile via an explosive or combustible propellant. State v. Murphy (1990), 49 Ohio St.3d 206. Proof of operability can be established by lay witnesses who were in *Page 20 
a position to observe the instrument and the circumstances surrounding the crime. Id.
 Circumstantial evidence including the representations and actions of the person exercising control over the gun may also be relied upon. R.C. 2923.11(B)(2). For example, displaying a gun during a robbery coupled with an explicit threat to shoot and kill the victim if the perpetrator's demands for money are not met is sufficient circumstantial evidence to permit a reasonable inference that the gun used during the robbery was operable. Murphy, supra. Moreover, pointing a gun at a robbery victim, even without an explicit threat to use it, constitutes an implicit threat sufficient to infer that the gun is operable. State v. Nelson (August 18, 1995), Montgomery App. No. 14775, unreported.
Id.
 {¶ 46} Here, the victim of the aggravated robbery, Joshua Vidor, testified that on August 28, 2006, at approximately 3:30 p.m., he was replacing the back door to a rental property that he owned on Basset Avenue in Franklin County, Ohio. (Tr. Vol. I, at 38.) Mr. Vidor testified:
 * * * When I was finishing caulking or just before I finished, I heard a noise and I turned around to see two young men aiming guns at me. One of them said something to the extent of, don't make any noise, if you do we'll shoot you. They told me to lift up my hands where the other one came forward and took my keys, my cell phone, my wallet. He then told me to turn around, and yelled down; which I did, facing the door away from where they were at.
 The one stayed somewhat behind me with a gun aimed at me while the other one went back into the alley where my truck was locked and proceeded to try to open the truck door but was unable to get the truck door opened for whatever reason. Came back and asked which one of the three keys opened the door of the truck. And I pointed out to him the keyless entry worked as well as the only automobile key on the ring went to the truck. He asked me which one of my credit cards was the bank card, which I informed him which one was. I at *Page 21 
that time was told to turn back around, which I did, and I was still kneeling at that time.
 The one gentleman, or I guess you wouldn't call him a gentleman, but went back to the truck. I heard it get started. And I don't know which one said it, but one of them said to the other, don't shoot him or don't kill him. I don't recall. All I recall is being very happy to hear that and they peeled out and drove away with my truck.
Id. at 37-38.
 {¶ 47} According to Mr. Vidor, although he ultimately was able to recover his truck and his wallet, his cash, a bank card, and his cell phone were never recovered. Id. at 44.
 {¶ 48} Mr. Vidor testified that there were two robbers, "[b]oth men in probably their twenties." Id. According to Mr. Vidor, both robbers were African-American and "neither of them were very large. One had larger pec muscles that stood — you could see them through his shirt. But overall, neither one of them were large. They were both smaller stature. The one fellow had cornrows. The one fellow had the — not the one with the larger pecs, the other one had a little bit leaner face, hard to describe in words, but more prominent cheekbones on the one. Kind of hard to put in words." Id. at 44-45.
 {¶ 49} Mr. Vidor also testified that the robber who had his hair in "cornrows" [defendant's co-defendant] was "[t]he one that was dealing with the truck, the one that was not guarding me the whole time, the one that was not frisking me was the one with the cornrows." Id. at 46; see, also, id. at 67. According to Mr. Vidor, the robber who did not wear his hair in cornrows was standing over him. Id. at 46-47.
 {¶ 50} Detective Jason Wood, a Columbus police officer, testified that, after law enforcement authorities in Sheffield Lake notified him that they had found Mr. Vidor's vehicle with two persons asleep in it, Detective Wood traveled to Sheffield Lake, Ohio, *Page 22 
and had contact with these two people who were identified as defendant and Dante Hill. Id. at 94.
 {¶ 51} Detective Wood testified that at one point he showed Mr. Vidor a photo array that included a photograph of defendant. Id. at 99. Detective Wood testified that Mr. Vidor picked out two photographs that he believed appeared similar to defendant; however, neither of the photographs that Mr. Vidor chose depicted defendant. Id. at 100-101. Detective Wood also testified that, in his comments, Mr. Vidor indicated that one the robbers had "large pectoral muscles" [chest muscles]. Id. at 100; see, also, State Exhibits Nos. D-1, [9] F-1 and F-2.
 {¶ 52} Prior to Detective Wood's testimony, Mr. Vidor himself had testified about the photo array involving defendant as follows:
 Viewed photos one through six in the lineup. I think it is number two, but also think that number five looks similar to picture number two. The one that looks like this had large pecs, but — the chest muscles. So even though in those pictures it was just head shots, I was able to know that that was the one that I had noticed. So if someone had given me a chance to see a full length picture I could have 100 percent without doubt know — know whether that was the right one because I remember the body more of that one.
Id. at 53-54.
 {¶ 53} Notwithstanding this testimony, Mr. Vidor was unable to make an in-court identification of defendant, id. at 60, and his testimony as to defendant's height also was inaccurate. Id. at 61-62; 70-72. *Page 23 
 {¶ 54} Mr. Vidor, who stated he had some familiarity with handguns, id. at 47-48, described the weapons used by the robbers as follows:
 The one fellow that did not have the cornrows [defendant], he had what appeared to me to be maybe a Berretta 92, the stainless model, at least the barrel part, very dirty, looked like it hadn't been cleaned in a long time, had a lot of the black around it in front of the barrel.
 The other fellow looked like he had either a Glock or a Hi-Point semiautomatic pistol just judging by the narrow and tall profile of the barrel. That was the black gun and I couldn't tell which one in fact it was. It's hard to tell a black gun, the details. So that was — that was the best of my knowledge.
Id. at 49.
 {¶ 55} Mr. Vidor also testified:
 The one that stayed with me the whole time during the process and that also took the contents from my pocket [ i.e., defendant] had what appeared to be a stainless barrel Berretta 92, or something that looked similar, dirty. And the other one had a black what appeared to be either a Hi-Point or a Glock, a semiautomatic pistol. I say either one because sometimes it's hard to tell the difference. They both have a narrow, tall profile on the barrel.
Id. at 54-55.
 {¶ 56} Mr. Vidor further testified that the guns used in the robbery appeared to be "real guns" and he regarded the guns as such. Id. at 63. On direct examination, after viewing photographs of the weapons recovered in his truck, Mr. Vidor testified that the photographs showed weapons that were "not exactly, but close" to the guns the robbers used at the time of the robbery. Id. at 55. Mr. Vidor later conceded that his descriptions about the weapons used in the robbery, which he made shortly after the robbery, may have been inaccurate to a certain extent. Id. at 72-73; 118-119. *Page 24 
 {¶ 57} In reviewing defendant's claim that his conviction for aggravated robbery with firearm specification is against the manifest weight of the evidence, we are mindful that "[determinations of credibility and weight of the testimony remain within the province of the trier of fact." Walters, at ¶ 94, citing DeHass, at paragraph one of the syllabus; see, also, Harris, supra, at ¶ 18. Here, the testimony of Mr. Vidor and Detective Wood, and reasonable inferences drawn from these witnesses' testimony, if believed by the jury, as the trier of fact, support the state's allegation that defendant was one of the robbers. In this case, defendant, an African-American male with developed pectoral muscles, was found in the passenger seat of Mr. Vidor's stolen vehicle with a .380 Hi-Point between the passenger seat and the center console (Tr. Vol. I, 123-125), a gun that was similar to the weapon used in the robbery.
 {¶ 58} Although Mr. Vidor's inability to identify defendant as one of the robbers and his inaccuracies about the weapons used in the robbery raise doubt as to whether defendant was one of the robbers, we nevertheless cannot conclude that, based on the evidence in the record, the jury "lost its way" by finding that beyond a reasonable doubt defendant was one of the robbers, especially since defendant was apprehended in defendant's vehicle with a gun nearby that was similar to the gun used in the robbery against Mr. Vidor. See State v. Henry, Franklin App. No. 04AP-1061, 2005-Ohio-3931, at ¶ 33, appeal not allowed, 107 Ohio St.3d 1699, 2005-Ohio-6763, quoting Bourjaily v.United States (1987), 483 U.S. 171, 179-180, 107 S.Ct. 2775 (observing that the probative value of circumstantial evidence equals that of direct evidence and "` individual pieces of evidence, insufficient in themselves to prove a point, may in cumulation prove it'"). Also, the testimony of Mr. Vidor, and reasonable inferences drawn from his *Page 25 
testimony, if believed by the jury after taking note of any inconsistencies, support the state's allegation that defendant displayed, brandished, indicated that he possessed, or used a deadly weapon when he robbed Mr. Vidor. See, generally, DeHass, at paragraph one of the syllabus.
 {¶ 59} Additionally, although the state's evidence failed to prove by direct evidence that the firearm used by defendant in the robbery was operable, such a failure is not fatal. "In proving that a deadly weapon constitutes a firearm, the State need not produce the gun or offer direct, empirical evidence that the gun is operable, that is, capable of expelling or propelling a projectile via an explosive or combustible propellant." Boddie, supra, citing Murphy, supra. "[P]ointing a gun at a robbery victim, even without an explicit threat to use it, constitutes an implicit threat sufficient to infer that the gun is operable."Boddie, supra, citing Nelson, supra.
 {¶ 60} Furthermore, the jury, as the trier of fact, was free to believe or disbelieve, Officer Shawn Corr, a police officer for the City of Sheffield Lake, when he testified that "Dante Hill said that they were lost. And I believe DeJuan Glover stated that something to the effect that they came across [Mr. Vidor's] vehicle from another person in Toledo. They were driving around, got lost and they seen [sic] cornfields and somehow ended up in Sheffield Lake." Id. at 133-134.
 {¶ 61} In McKay Mach. Co. v. Rodman (1967), 11 Ohio St.2d 77, the Supreme Court of Ohio explained:
 * * * [I]n the last analysis, the jury or the court, if a jury is waived, is the sole weigher of credibility and testimony. The jury can accept all, a part or none of the testimony offered by a witness whether it is expert opinion or eyewitness fact, whether it is merely evidential or tends to prove the ultimate *Page 26 
fact. In other words, `(t)he jury is the sole judge of the weight of the evidence and the credibility of witnesses. It may believe or disbelieve any witness or accept part of what a witness says and reject the rest. (In so doing it) * * * should consider the demeanor of the witness and the manner in which he testifies, his connection or relationship with the * * * (plaintiff) or the defendant, and his interest, if any, in the outcome.' State v. Antill, 176 Ohio St. 61, 67, 197 N.E.2d 548.
Id. at 82. (Fn. omitted.)
 {¶ 62} After independently reviewing the evidence, and bearing in mind the jury's superior, first-hand perspective in judging the demeanor and credibility of witnesses, see, e.g., Harris, supra, at ¶ 18, we cannot conclude that the jury "lost its way" by finding that the state's evidence was persuasive to support a conviction for aggravated robbery with firearm specification, or that this is "`* * * the exceptional case in which the evidence weighs heavily against conviction.'"Group, at ¶ 77, quoting Martin, at 175. Stated differently, we cannot conclude that, after determining the credibility and weight of the testimony, and taking note of any inconsistencies, the jury erred by finding that beyond a reasonable doubt defendant committed aggravated robbery against Joshua Vidor, and during the commission of this robbery defendant displayed, brandished, indicated that he possessed, or used a deadly weapon.
 {¶ 63} Accordingly, for the reasons set forth above, we find that defendant's conviction for aggravated robbery with firearm specification is not against the manifest weight of the evidence.
 {¶ 64} By his second assignment of error, defendant asserts defense counsel's failure to move for a separate trial implicitly suggested to the jury that defendant and his *Page 27 
co-defendant acted in concert, thereby prejudicing defendant's defense and constituting ineffective assistance of counsel.
 {¶ 65} "[T]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland v. Washington (1984), 466 U.S. 668,686, 104 S.Ct. 2052, rehearing denied, 467 U.S. 1267, 104 S.Ct. 3562.
 {¶ 66} "Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. at 689. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy.'" Id.
 {¶ 67} "In making the determination whether the specified errors resulted in the required prejudice, a court should presume, absent a challenge to the judgment on the grounds of evidentiary insufficiency, that the judge or jury acted according to law." Id. at *Page 28 
695. Furthermore, "a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury." Id.
 {¶ 68} When asserting an ineffective-assistance-of-counsel claim, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. See, also, State v. Bradley (1989), 42 Ohio St.3d 136, paragraph two of the syllabus, rehearing denied, 43 Ohio St.3d 712, certiorari denied (1990),497 U.S. 1011, 110 S.Ct. 3258, rehearing denied (1990), 497 U.S. 1050,111 S.Ct. 16, following State v. Lytle (1976), 48 Ohio St.2d 391, vacated on other grounds by, 438 U.S. 910, 98 S.Ct. 3135, andStrickland, supra (holding in part that "[c]ounsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition prejudice arises from counsel's performance").
 {¶ 69} In Strickland, the Supreme Court of the United States set forth a two-pronged test to prove a claim of ineffective assistance of counsel:
 * * * First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable. *Page 29 
Id. at 687. See, also, Wiggins v. Smith (2003), 539 U.S. 510, 521,123 S.Ct. 2527 (discussing Strickland); Gideon v. Wainwright (1963),372 U.S. 335, 83 S.Ct. 792 (holding that right to counsel under the Sixth Amendment is made obligatory on the states through Fourteenth Amendment); Bradley, at paragraph three of the syllabus (holding in part that "[t]o show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different").
 {¶ 70} Thus, to support his claim that defense counsel was ineffective for failing to seek a separate trial, defendant must show: (1) that defense counsel's failure to move for a separate trial was deficient; and (2) that defense counsel's deficient performance prejudiced his defense.
 {¶ 71} R.C. 2945.13 provides: "When two or more persons are jointly indicted for a felony, except a capital offense, they shall be tried jointly unless the court, for good cause shown on application therefor by the prosecuting attorney or one or more of said defendants, orders one or more of said defendants to be tried separately."
 {¶ 72} "Joinder of defendants and the avoidance of multiple trials is favored in the law for many reasons. Joinder conserves judicial and prosecutorial time, lessens the not inconsiderable expenses of multiple trials, diminishes inconvenience to witnesses, and minimizes the possibility of incongruous results in successive trials before different juries." State v. Thomas (1980), 61 Ohio St.2d 223, 225.
 {¶ 73} Accordingly, as a general matter, joinder is the rule rather than the exception. See State v. Rogers (June 19, 1998), Hamilton App. No. C-970190, dismissed, appeal not allowed by, 83 Ohio St.3d 1449, and appeal not allowed by (2002), *Page 30 94 Ohio St.3d 1433, 2002-Ohio-5651; State v. Carter (May 21, 1999), Lucas App. No. L-97-1162, dismissed, appeal not allowed,86 Ohio St.3d 1489; State v. Jacocks, Stark App. No. 2002CA00359, 2003-Ohio-6839, at ¶ 92, appeal not allowed (2004), 102 Ohio St.3d 445, 2004-Ohio-2263; andState v. Thompson (1998), 127 Ohio App.3d 511, 523, appeal not allowed,83 Ohio St.3d 1451.
 {¶ 74} Here, we cannot conclude that it was an unreasonable trial strategy for defense counsel to defend defendant in a joint trial. In the present case, defense counsel reasonably may have believed that the state's evidence was such that a jury would believe defendant's co-defendant was responsible for the aggravated robbery, especially in view of Mr. Vidor's identification of defendant's co-defendant in a photo array, and Mr. Vidor's failure to identify defendant in a photo array. See, e.g., State v. Langford, Cuyahoga App. No. 80753, 2003-Ohio-159, at ¶ 49, appeal not allowed, 99 Ohio St.3d 411,2003-Ohio-2454 (concluding that a defendant's counsel was not ineffective for failing to seek separate trials because "[t]rial counsel may have believed that the evidence was such that the jury would believe [a defendant's] co-defendants were entirely responsible for the murder victim, and the jury would, as a result, convict only [the defendant's] co-defendants"); State v. Jones, Cuyahoga App. No. 80737, 2002-Ohio-6045, at ¶ 107, motion for delayed appeal denied (2003),98 Ohio St.3d 1509, 2003-Ohio-1572, and appeal not allowed (2003),98 Ohio St.3d 1513, 2003-Ohio-1572 (finding that the decision for a defendant to be tried with his two co-defendants "was a tactical decision within the range of professionally reasonable judgment"); State v. Norman, Cuyahoga App. No. 80702, 2002-Ohio-6043, at ¶ 50, appeal not allowed by (2003),98 Ohio St.3d 1511, 2003-Ohio-1572. See, also, State v. Bewsey (June 16, 1993), Summit App. No. 15857 (finding *Page 31 
that trial counsel was not ineffective because trial counsel may have believed that a jury would find that a co-defendant was entirely responsible for the crime of breaking and entering).
 {¶ 75} Because defense counsel's decision against seeking separate trial was not unreasonable, we find that defendant has failed to rebut the presumption that, under the circumstances of this case, defense counsel's challenged action might have been sound trial strategy. SeeStrickland, at 689.
 {¶ 76} Additionally, for the reasons set forth below, even assuming arguendo that defendant has demonstrated that defense counsel's failure to move for a separate trial was deficient, we cannot conclude that in this case defense counsel's purportedly deficient performance prejudiced defendant's defense based on a claim that a joint trial implicitly suggested that defendant and his co-defendant acted in concert.[10]
 {¶ 77} In United States v. Mardian (C.A.D.C, 1976), 546 F.2d 973, the United
States Court of Appeals for the District of Columbia Circuit observed the following:
 * * * The Supreme Court [of the United States] has long recognized that in [conspiracy] cases "the liberal rules of evidence and the wide latitude accorded the prosecution may, and sometimes do, operate unfairly against an individual defendant * * *." The "dangers of transference of guilt" are such that a court should use "every safeguard to individualize each defendant in relation to the mass." * * * Particularly where there is a great disparity in the weight of the evidence, strongly establishing the guilt of some defendants, the danger persists that that guilt will improperly "rub off" on the others. *Page 32 
 This court has often expressed its acceptance of the rule announced in [United States v. Kelly (C.A.2, 1965), 349 F.2d 720], requiring severance when the evidence against one or more defendants "is far more damaging" than the evidence against the moving party. * * *
Id. at 977. (Citations omitted.)
 {¶ 78} Here, as this case does not concern charges of conspiracy, the instant case is factually distinguishable from Mardian. Nevertheless,Mardian is instructive. In the present case, notwithstanding a danger of "transference of guilt," except for Mr. Vidor's inability to identify defendant in a photo array, we find that the weight of the evidence establishing defendant's guilt is not greatly disparate from the evidence adduced at trial against defendant's co-defendant. Thus, we cannot conclude that, under the facts and circumstances of this case, the danger that a co-defendant's guilt would "rub off" on defendant was particularly maximized, as defendant suggests. Given the totality of the evidence against defendant, we cannot find that the jury concluded that defendant was guilty solely through defendant's association with his co-defendant in a joint trial, as defendant maintains,
 {¶ 79} Moreover, in this case the trial court explicitly directed the jury to separately consider the evidence against each defendant. The trial court expressly instructed the jury thus:
 * * * Each defendant is charged with aggravated robbery in Count One of the indictment. Now, for this and the following counts, you must of course consider and determine each of the verdicts with regard to each defendant separately. Either, neither, or both of the defendants may be found guilty or not guilty of none, one, or both of the counts in the indictment. *Page 33 
 As a result, in the following instructions in regard to these offenses I will refer to — I will use the phrase, "the defendant under consideration," meaning that you are instructed to consider each defendant separately in making your determinations.
(Tr. Vol. I, at 182-183.)[11]
 {¶ 80} Because "[a] presumption always exists that the jury has followed the instructions given to it by the trial court," Pang v.Minch (1990), 53 Ohio St.3d 186, 187, at paragraph four of the syllabus, rehearing denied, 54 Ohio St.3d 716, approving and following State v.Fox (1938), 133 Ohio St. 154; Browning v. State (1929), 120 Ohio St. 62, and, absent any evidence that the jury failed to follow the trial court's instruction, we find that defendant has failed to rebut the presumption that the jury followed the trial court's instructions to separately consider the evidence against defendant.[12] *Page 34 
 {¶ 81} Also, absent a challenge by defendant to the trial court's judgment on grounds of evidentiary insufficiency, we must presume that the jury acted according to law by separately and impartially determining verdicts against each defendant without sympathy, prejudice, or bias. See Strickland, at 695.
 {¶ 82} Accordingly, even assuming arguendo that defendant has demonstrated that defense counsel's failure to move for a separate trial was deficient, for the reasons set forth above, we hold that at trial defense counsel did not provide ineffective assistance to defendant. We therefore overrule defendant's second assignment of error.
 {¶ 83} In summary, having found that defendant's conviction for the offense of robbery under R.C. 2911.02(A)(2) cannot stand based onColon I, as reconsidered in Colon II; having found that defendant's claim that his robbery conviction is against the manifest weight of the evidence is moot; and having found that defendant's conviction for aggravated robbery with firearm specification is not against the manifest weight of the evidence, we overrule defendant's first assignment of error. Also, having found that defense counsel did not provide ineffective assistance to defendant, we overrule defendant's second assignment of error.
 {¶ 84} Accordingly, having overruled both of defendant's assignments of error, but also having found that defendant's conviction for the offense of robbery under R.C. 2911.02(A)(2) cannot stand based onColon I, as reconsidered in Colon II, we reverse in part the judgment of the Franklin County Court of Common Pleas and remand the matter *Page 35 
to that court for proceedings in accordance with law and consistent with this opinion. Upon remand, we instruct the common pleas court to vacate defendant's conviction and sentence for the offense of robbery under R.C. 2911.02(A)(2).
Judgment reversed in part, and cause remanded with instructions.
SADLER and TYACK, JJ., concur.
[1] By this same indictment, Dante Hill also was charged with one count of aggravated robbery with firearm specification, and two counts of robbery, each with a firearm specification. Defendant and Dante Hill were tried together in a single jury trial.
[2] Count 4 of the indictment, having a weapon while under disability, was tried to the court, not the jury. (Tr. Vol. II, at 19.)
[3] In Colon I, the Supreme Court of Ohio observed: "In closing, the prosecuting attorney said, `Vincent Colon robbed Samuel Woodie. He attempted to commit a theft offense, and he inflicted harm. It's simple. I ask you to keep it that simple and find him guilty.'" Id. at ¶ 31, fn. 2.
[4] In Colon II, on reconsideration, the Supreme Court of Ohio reiterated:
 We assume that the facts that led to our opinion in Colon I are unique. As we stated in Colon I, the defect in the defendant's indictment was not the only error that had occurred: the defective indictment resulted in several other violations of the defendant's rights. 118 Ohio St.3d 26, 2008-Ohio-1624, 885 N.E.2d 917, ¶ 29. In Colon I, we concluded that there was no evidence to show that the defendant had notice that recklessness was an element of the crime of robbery, nor was there evidence that the state argued that the defendant's conduct was reckless. Id. at ¶ 30, 885 N.E.2d 917. Further, the trial court did not include recklessness as an element of the crime when it instructed the jury. Id. at ¶ 31, 885 N.E.2d 917. In closing argument, the prosecuting attorney treated robbery as a strict-liability offense. Id.
Id. at ¶ 6.
[5] Although in Colon II, the majority stated that "[a]pplying structural-error analysis to a defective indictment is appropriate only in rare cases, such as Colon I, in which multiple errors at the trial follow the defective indictment," id. at ¶ 8, and "[c]onsistent with our discussion herein, we emphasize that the syllabus in Colon I confined to the facts in that case[,]" id., Justice O'Donnell in his dissent, with Justices Lundberg Stratton and Lanzinger concurring, noted: "I fail to grasp * * * that a different defendant who faces a defective indictment and raises the matter as Colon did on appeal should not be treated in the same manner as Colon." Id. at ¶ 12. Justice O'Donnell, with Justices Lundberg Stratton and Lanzinger, further stated:
 Structural-error analysis does not permit a court to determine that a particular error, e.g., omission of an essential element from an indictment, is structural error in one case but not structural error in another. Rather, structural-error analysis is applied when a particular error permeates the trial and renders it fundamentally unfair in every case, such that, when the error occurs, "no criminal punishment may be regarded as fundamentally fair."
Id. at ¶ 13, quoting Rose v. Clark (1986), 478 U.S. 570, 577,106 S.Ct. 3101.
[6] At the sentencing hearing, the trial court stated:
 THE COURT: The F3 was dismissed. So it's the F1 and the F2. Yes. That's right. Thank you. Those did merge for sentencing purposes. And then we also have the felony three count of having a weapon while under a disability.
 MR. HALLEY: [Defense Counsel]: That was Rule 29ed, Your Honor.
 THE COURT: That is correct. * * *
[7] By his first assignment of error, defendant does not, however, claim that his conviction for aggravated robbery with firearm specification is supported by legally insufficient evidence. Absent any challenge to the legal sufficiency of the state's evidence, we shall therefore confine our review to a determination of whether defendant's conviction for aggravated robbery with firearm specification is against the manifest weight of the evidence. See, generally, Toledo's GreatEastern Shoppers City, Inc. v. Abde's Black Angus Steak House No. III,Inc. (1986), 24 Ohio St.3d 198, 202, citing former App. R. 12(A); C.Miller Chevrolet, Inc. v. City of Willoughby Hills (1974),38 Ohio St.2d 298, 301 (observing that "[i]t is certainly true * * * that in reviewing the judgment of a lower court, a court of appeals need only pass upon errors assigned and briefed; errors not specifically raised may be disregarded"); Mtge. Electronic Registrations Sys. v. Mullins,161 Ohio App.3d 12, 2005-Ohio-2303, at ¶ 22; see, also, App. R. 12(A)(2) and 16(A)(7).
[8] After the crimes occurred from which charges against defendant arose, R.C. 2913.01 was amended by (2006) Sub. H.B. No. 347, effective March 14, 2007. Division (K)(1) was unaffected by the amendments of (2006) Sub. H.B. No. 347.
[9] According to State's Exhibit D-1, after viewing an investigative photo array, Mr. Vidor stated: "I viewed the photo's [sic] 1-6 on the linup [sic], and think it is #2, but also think that #5 looks similar. The one that looks like this had large pecs (chest muscles)."
[10] In this case defendant does not claim that prejudice arose because (1) defendant wanted to call his co-defendant as witness; (2) defendant and his co-defendant had antagonistic defenses; (3) the complexity of the case made it difficult for the jury to separate the evidence against each co-defendant, or (4) a confession by defendant's co-defendant implicating defendant was offered at trial. See, generally, Katz, Giannelli, Blair, Lipton, Baldwin's Ohio Practice Katz Giannelli Criminal Law (2003) 341-352, Sections 58-4 to 58-9.
[11] Even the assistant prosecuting attorney in his closing argument told the jury: "You are allowed to find both of these men guilty, neither of these men guilty, you can find both of them not guilty, or you can find it's proven against one and not proven against another. That's within your province to do that. Okay. This is not necessarily an all or nothing scenario. That's up to you." (Tr. Vol. I, at 154.)
[12] Cf. Bruton v. United States (1968), 391 U.S. 123, 135-136, stating that:
 * * * Not every admission of inadmissible hearsay or other evidence can be considered to be reversible error unavoidable through limiting instructions; instances occur in almost every trial where inadmissible evidence creeps in, usually inadvertently. "A defendant is entitled to a fair trial but not a perfect one." * * * It is not unreasonable to conclude that in many such cases the jury can and will follow the trial judge's instructions to disregard such information. Nevertheless * * * there are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored. * * * Such a context is presented here, where the powerfully incriminating extrajudicial statements of a codefendant, who stands accused side-by-side with the defendant, are deliberately spread before the jury in a joint trial. * * *
The case under appeal here, however, is factually distinguishable fromBruton. See, also, State v. Rosen (1949), 151 Ohio St. 339, syllabus, holding that:
 Where it is disclosed, preceding the trial of codefendants jointly charged with the commissions of a felony, that a signed confession by one of the defendants, made in the absence of his codefendants, will be put in evidence, which confession contains statements showing the guilt of a codefendant, and based thereon an application for separate trial is duly made by that codefendant, it is the duty of the trial court either to grant the application or to order the prejudicial matter withheld or deleted before admitting the confession in evidence. *Page 1